**LEE v. SMITH et al.**

No. 1607.

Court of Appeal of Louisiana. First Circuit.

June 9, 1936.

Plauche & Bass, of Lake Charles, for appellant.

Gilbert H. Graham, of Lake Charles, for appellees.

LE BLANC, Judge.

Plaintiff is the father of a young girl named Lillian Lee, a minor, who claims to have sustained a serious injury to her pharynx, esophagus, and stomach as a result of having eaten unwholesome food in a restaurant owned and operated by the defendants in the city of Lake Charles. He had instituted this suit at first against the defendant Gossett Smith alone, claiming damages for himself in the sum of $199.50 for expenses incurred by him in having his daughter treated, and in the sum of $2,527 for her use and benefit, for the damages suffered by her as a result of her injury. Later, plaintiff learned that the restaurant at which his daughter claims to have sustained the injury complained of was owned and conducted by a commercial partnership composed of the defendant Gossett Smith and G. B. Daugherty, and he accordingly asked by way of supplemental petition, that the said G. B. Daugherty be made a party defendant as well as Smith, and that he be

cited also, and that judgment be rendered against them both, in solido.

In another supplemental petition plaintiff also revised the items of damage claimed by his daughter, and as amended these now consist of various items aggregating the sum of $6,000.

The basis of the demand may be said to appear in the following article of the supplemental petition: "That therefore, by reason of fault of the said co-partnership, existing between the said Gossett Smith and G. B. Daugherty, and of the breach of warranty implied by law in such cases, in selling and serving to your petitioner's said daughter food which was unfit for human consumption, and which contained deleterious substances, as aforesaid, causing injuries, illness and suffering of your petitioner's said daughter, as aforesaid, the said defendants are liable for the damages occasioned thereby."

It may be important to note that one of plaintiff's petitions also contains an allegation to the effect that neither he, nor his daughter, her physicians or any one else was able to determine exactly what was the cause of the food being unwholesome or unfit for human consumption, nor the exact nature of any of the deleterious ingredients therein contained.

The answer of the defendants may be said to consist more or less of a denial of all the allegations of the plaintiff's petition tending to impose any liability on them for the causes therein set out. After trial in the lower court the district judge rejected the plaintiff's demand and dismissed his suit at his costs. Hence, this appeal.

■ The allegation which we referred to in which plaintiff admitted that no one was able to determine what had rendered the food complained of unwholesome, indicated some apprehension or difficulty on his part and his daughter's to sustain their cause of action by proper and necessary proof. Under those circumstances, plaintiff might have resorted to the doctrine of res ipsa loquitur, as we note was done in the recent case of Watts v. Ouachita Coca-Cola Bottling Co. Ltd. (La.App.) 166 So. 151, but even then, under the ruling of the court in that case, he would still have been held to the duty of showing that the food was unwholesome and injurious, and that his daughter's illness resulted therefrom, for that doctrine, as held by the court, citing C.J. p. 1212, "does not dispense with the requirement that the act or omission upon which the defendant's liability is predicated be established as the proximate cause of the alleged injury."

■ Therefore, in spite of any difficulty which may present itself in ascertaining the exact nature or cause of the unwholesomeness of the food or what particular substance it contained which may have been deleterious, plaintiff is held to the burden of proving that it was unwholesome and that it contained such ingredients and that that was the proximate cause of the illness which his daughter complained of, and unless he has shown to this court that the district judge committed manifest error in holding that he had not carried that burden, he cannot expect a reversal of the judgment.

The testimony shows that Miss Lee, accompanied by two friends, Miss Mamie Abercrombie and Miss Ruth Carnahan, went to lunch together between 11 o'clock and noon on July 19, 1934, at the restaurant of the defendants. The restaurant served only a plate lunch and sandwiches. All three ladies ordered the plate lunch, which on that day consisted of a small steak with rice and gravy, peas and corn and tomatoes cooked together. Miss Lee does not mention rice, but speaks of creamed potatoes instead. The menu, as we have stated it, is that given by the chef who was a witness in the case. The difference mentioned, however, is not important.

Miss Lee says that after a second or third bite of the peas and corn which she had mixed with the potatoes, she experienced a very unusual taste, and as she swallowed she felt a burning sensation which went right down to her stomach. We quote her own words: "I got so nervous I began to shake all over, and it made me deathly sick, nauseated, one of the horriblest feelings I have ever had." Miss Abercrombie says that after she had eaten a few bites of the lunch, there was something which tasted very bitter, which seemed to be either the peas or the corn. She looked at Miss Lee who was holding her throat and said "You must have gotten hold of some of the same stuff I did." Miss Abercrombie nevertheless continued eating "and finished her dinner and Miss Carnahan did too." Miss Lee, however, she says, did not eat anymore. Neither Miss Abercrombie nor Miss Carnahan became ill, and except for the remark made by Miss Abercrombie to Miss Lee, they never complained of the quality of the food.

After they had finished eating, one of the ladies paid for the lunches and they walked

out on the street. Miss Lee intending to go to Kress's where she was employed. The other two helped her, as she complained of feeling weak, Miss Carnahan going with her as far as the Kress store and Miss Abercrombie leaving them before, as she had to do some shopping. At the store Miss Carnahan took Miss Lee to the girl's rest room and went after some spirits of ammonia for her. This did not relieve her, however, and she then obtained permission from the store manager to take her to the doctor's. She took her to see Dr. Hatchette, and he prescribed some milk of magnesia for her at once. During the afternoon she got worse instead of improving. The doctor was called again at 5 and again later in the evening, when he decided that she had better be sent to the hospital for observation. There, he called in Dr. Sewell for consultation, and they diagnosed her case as one of acute gastro-enteritis. He explained that by saying that she had an irritation of the gastro-intestinal tract, the result of digestive disturbances. She continued to complain of a burning sensation in her throat, so he decided that it would be well for her to go to the Charity Hospital in New Orleans for an examination. She went there, but refused to go through the examination, and came back home two days afterwards. She says that she thought the examination would be too painful; that is why she would not submit to it.

One of the first thoughts which occurs to us is, Why should the food partaken of by Miss Lee, which she claims made her so violently sick, and which was the very same food eaten by Miss Abercrombie and Miss Carnahan, not have had some distressing effect, at least, on these other two ladies? In the case of Doyle v. Fuerst & Kraemer, Ltd., 129 La. 838, 56 So. 906, 40 L.R.A.(N.S.) 480, Ann.Cas.1913B, 1110, the court in holding that it was the refreshments partaken of by the plaintiff at the defendant's confectionary that had made him ill mentioned the fact that the young lady who had accompanied him there and had also eaten the same things he did, and had, like him, taken sick during the night. That seemed to have been an important element taken into consideration in deciding the question of fact on which the liability of the defendant was predicated. In the case of Davis v. Van Camp Packing Co., 189 Iowa, 775, 176 N. W. 382, 17 A.L.R. 649, the court again seemed to have been influenced by the fact that several members of the plaintiff's family had been injured by the same food which

he complained had caused his son's sickness. In this case, in addition to the two young ladies who were with Miss Lee on the day she claims to have been made sick, several regular patrons of the defendant's restaurant testified that they had also eaten the same lunch that day, and not one of them suffered any ill effects.

There is no doubt but that Miss Lee was very sick on the day Dr. Hatchette was called to see her and for several days thereafter and whilst both Dr. Hatchette and Dr. Sewell were of the opinion that her trouble might have been caused by some foreign substance having entered the stomach through the mouth, they do not think that she would have had the effects complained of by her so shortly after having eaten her lunch that day. These intestinal disturbances occur several hours after the person has partaken of the food which causes them. Dr. E. P. Bordelon, Dr. T. H. Watkins, and Dr. Walter Moss, the latter called as an expert by the court, were of the same opinion. The last two were of the further opinion that the symptoms described by the plaintiff excluded the possibility that the condition was brought about by the food she had eaten.

With regard to the burning sensation which Miss Lee says she experienced in her mouth and down the esophagus, all the doctors say that such a sensation might have been produced by having eaten a ball of red pepper or by swallowing concentrated lye or some other burning acid. But they all agree that such a burning sensation from any of these causes would have also produced objective symptoms in the mucus membrane, and no such symptoms were observed in the case of Miss Lee.

There can be no doubt about the strict duty which the law imposes on those engaged in preparing and selling food for human consumption to the public to see that it is kept fresh at all times, is wholesome and carefully prepared before serving. Both the federal and state governments manifest their interest in the public in this regard by maintaining proper supervision over such business and regularly inspecting the places where it is conducted. All of this, however, does not relieve any one claiming to have been injured through the fault or neglect of another engaged in such business by having served stale, unwholesome, or poisonous food, or food containing harmful ingredients, of the duty of proving by a preponderance of testimony that the injury complained of was actually caused by

the eating or partaking of such food. Such was the plaintiff's duty in this case with regard to the illness which his daughter claims to have suffered. We, with the district judge, do not believe that he has carried that burden of proof as indicated from the testimony in the record which we have tried to analyze herein. We can find no manifest error in the judgment of the lower court, and therefore it becomes our duty to affirm it.

Judgment affirmed, plaintiff appellant to pay all costs of appeal.