### OGDEN et al. v. ROSEDALE INN.
#### No. 17179.

Court of Appeal of Louisiana. Orleans.
May 22, 1939.

Rehearing Denied June 12, 1939.
Writ of Certiorari Denied July 14, 1939.

Claude L. Johnson, of New Orleans, for appellant.

James G. Schillin, of New Orleans, for appellees.

McCALEB, Judge.

The four plaintiffs, Mrs. Camille Berthelot, wife of Michael E. Culligan, Mrs. Mary Sue Berthelot, wife of Philip S. Hanlon, Mrs. Stella Berthelot, divorced wife of Nash Ogden, and Joseph B. Berthelot, brought this suit for damages against Rosedale Inn, a commercial co-partnership composed of Louis, Harold, John and Henry Lenfant, alleging that they had been poisoned as a consequence of having eaten deleterious and unwholesome food at the defendant's restaurant on July 12, 1937.

The defendant filed certain exceptions to plaintiffs' petition which were overruled. Thereafter, it answered denying generally the averments of the petition and further set forth that, if the plaintiffs suffered from food poisoning in the manner alleged by them, their illness was not due to any food which might have been consumed by them at its restaurant; that it has been engaged in the restaurant business in the City of New Orleans for many years; that the food served by it is always wholesome and of the very best quality obtainable; that, on the alleged date upon which the plaintiffs ate at its restaurant, it served the same quality and character of food to a great number of people and that none of its patrons (other than the plaintiffs) have complained of the insalubrity of its victuals.

After a hearing on these issues, the district judge found for the plaintiffs and awarded the sum of $50 each to Mrs. Culligan, Mrs. Hanlon and Mr. Berthelot and the sum of $170 to Mrs. Ogden. The defendant has appealed and the plaintiffs have answered, praying for an increase in the allowance granted them below.

■ The exceptions filed by the defendant to plaintiffs' petition have not been stressed in this court. We therefore find it unnecessary to discuss them at length. The only one of these pleas which might be said to have any merit whatsoever is the exception of misjoinder of parties plaintiff. The trial judge, in overruling this exception, was evidently of the view that, since the claims arose out of one and the same transaction, the joinder of the plaintiffs in one suit would avoid a multiplicity of actions. This was a matter within his sound discretion and, in the absence of a showing of injury to the defendant, his ruling will not be disturbed. See Reardon v. Dickinson, 156 La. 556, 100 So. 715.

The facts of the case are not seriously disputed and we find them to be as follows:

Mrs. Culligan, Mrs. Hanlon and Mrs. Ogden are sisters and Mr. Berthelot is their brother. On July 12, 1937, at about 1:00 p. m., the plaintiffs, in company with their mother, Mrs. E. H. Rhodes, and Mary Sue Hanlon, the young child of Mrs. Hanlon, repaired to the defendant's restaurant on Canal Boulevard for the purpose of eating lunch. The plaintiffs ordered the regular table d'hote meal which consisted of soup, club steak, French fried potatoes and shrimp salad. Mrs. Rhodes ordered the same lunch but, instead of taking the shrimp, she ate a plain lettuce salad. Mary Sue Hanlon, the little girl, ate boiled crabs and gumbo.

After consuming the food served by the defendant, the entire party took an automobile ride and returned to their homes around six o'clock that evening. Mrs. Ogden and Mrs. Culligan went to the latter's house and Mrs. Hanlon, her mother, Mrs. Rhodes, her brother, Mr. Berthelot and her little daughter, Mary Sue, went to the former's home. Mrs. Ogden drank a glass of milk that evening. Mrs. Culligan had a plate of soup and Mrs. Hanlon and Mr. Berthelot ate eggs and grits. On the following day, all of the plaintiffs suffered from disorders of their digestive systems consisting of nausea, vomiting and diarrhea. Mrs. Hanlon and Mrs. Culligan and Mr. Berthelot were ill for two or three days. Mrs. Ogden, on the other hand, suffered a great deal more than the other plaintiffs. She was confined to her home for ten days and was treated by her physician, Dr. La Bruyere.

The theory of plaintiffs' case is that the shrimp salad which they ate at the defendant's restaurant was not fit for human consumption and that it is the direct cause of their illness. They have attempted to establish this as a fact by the process of elimination, exhibiting that, of the six people partaking of lunch at the defendant's restaurant, only four of them (the plaintiffs) ate shrimp salad and that they are the ones who suffered from food poisoning.

Dr. La Bruyere, Mrs. Ogden's physician, states that it is his belief that his patient was affected with food poisoning and that, according to the history of the case, it is very probable that the shrimp salad she ate was the direct cause of her illness. Plaintiffs further show that all of them, with the exception of Mr. Berthelot and Mrs. Hanlon, ate different food on the evening after their visit to the defendant's restaurant and they point to this fact as a circumstance tending to prove that the shrimp salad is the underlying cause of their ailment.

The defendant's evidence mainly consists of testimony to the effect that the restaurant it operates is modern and sanitary; that the shrimp salad consumed by the plaintiffs had been made in the morning of the day it was served and that the shrimp had been purchased by it on the previous day. It also produced Dr. E. A. Ficklen, who testified as an expert in the case. It is the opinion of Dr. Ficklen that the only manner in which it could have been positively determined that the plaintiffs' ailments are attributable to the shrimp salad would have been to have made a chemical analysis either of the shrimp or of plaintiffs' stools. He admits, however, that, of all the food partaken of by the plaintiffs prior to their illness, the shrimp salad is the most likely to have been the cause of their trouble because seafood is more susceptible of deterioration.

■ Counsel for the defendant maintains that the burden of proof was upon the plaintiffs to show that their illness resulted from eating unwholesome shrimp salad at the defendant's restaurant and that they have failed in this respect because the evidence produced by them is too uncertain to sustain a judgment in their favor.

While we agree with counsel that the plaintiffs had the burden of establishing that they were poisoned as a result of eating shrimp salad at the defendant's restaurant, we think that the evidence is sufficient to authorize the finding that their ailments are attributable to the shrimp salad and that the food served to them by the defendant was deleterious. The proof in the record clearly demonstrates that the plaintiffs were afflicted with food poisoning. All of them suffered with nausea, vomiting spells and diarrhea. These symptoms plainly indicate the presence of bacteria in the intestines. Moreover, it is very probable that the shrimp salad was the underlying cause of plaintiffs' illness. It is shown that all of them became sick about the same time and that the two other persons with them who did not eat shrimp were not affected.

■ Counsel for defendant seems to be of the belief that it was necessary for plaintiffs to prove beyond all doubt that the shrimp salad was the underlying cause of their illness and that it was encumbent upon them to have had a chemical analysis taken either of the food or of their stools in order that it might be positively established that the shrimp were unfit for human consumption. Counsel is mistaken. The law does not require exact proof but only that the claim be shown with reasonable certainty.

■ It is true that the defendant has introduced evidence (of a negative character) to the effect that it runs a clean and up-to-date establishment. Its witnesses declare that the shrimp and other materials used in making the salad were fresh and that no other patrons who partook of shrimp salad on that day either made a complaint or claimed to have been rendered ill as a result of consuming it. This type of evidence is always of great value in assisting the court in the determination of the genuineness of a plaintiff's claim and it must be weighed against the plaintiff's evidence. It cannot of itself, however, be regarded as establishing that the food was in fact wholesome and that it was free from latent defects.

■ In MacLehan v. Loft Candy Stores, 172 So. 367, we had occasion to discuss in detail the liability of a vendor of food to a purchaser who is made ill as a result of consuming unwholesome products. After reviewing the jurisprudence, we found that it is well established in our law that a vendor, holding himself out as having requisite skill and exceptional knowledge with respect to the quality of the food he dispenses, should indemnify his vendee against latent defects contained in the product which the vendee, by inspection or taste, could not have discovered for himself. Such is the law as laid down by the Supreme Court in Doyle v. Fuerst & Kraemer, 129 La. 838, 56 So. 906, 40 L.R.A.,N.S., 480, Ann.Cas.1913B, 1110.

Cases of this type must stand or fall upon their own particular facts. Here, our brother below, who saw and heard the

witnesses, was convinced that the shrimp salad served by the defendant was unwholesome and that the plaintiffs suffered from food poisoning as a result of consuming it. The conclusion he reached is amply supported by plaintiffs' evidence and we cannot say that his finding of fact is obviously wrong.

 The plaintiffs complain that the awards granted them by the district judge are inadequate. Mrs. Culligan, Mrs. Hanlon and Mr. Berthelot were sick for two or three days. They were each allowed the sum of $50. We feel that the judgment is correct and that it fully compensates them for the inconvenience and suffering they endured.

Mrs. Ogden, who is a trained nurse, was ill for approximately ten days. She claims that, as a result of her indisposition, she has lost nursing fees amounting to $7 per day and that she owes her physician $15 for services rendered to her. The trial judge evidently took these factors into consideration as he awarded her a judgment for $170. We think that the allowance is adequate.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.