PALMER v. ROSEDALE CATERING CO.
(PALMER, Intervener).

No. 17358.

Court of Appeal of Louisiana. Orleans.

May 6, 1940.

Rehearing Denied June 4, 1940.

Writ of Certiorari Denied July 18, 1940.

Claude L. Johnson, of New Orleans, for Rosedale Catering Co.

Geo. Piazza, of New Orleans, for Mr. and Mrs. John E. Palmer.

JANVIER, Judge.

Mrs. Lillian R. Sutherland, wife of John E. Palmer, brought this suit for damages against a commercial partner- ship known as Rosedale Catering Com- pany and the individual members thereof, John L. Lenfant, Jr., Louis Lenfant and Henry Lenfant, who conduct a restaurant in the City of New Orleans known as the "Rosedale Inn". She alleged that she had been poisoned by eating part of a stuffed crab, which, on June 29, 1938, at about 7 o'clock in the evening, had been served to her in the said restaurant, and that she had suffered severely for several days and, as a result of the intestinal disturbance, had found it necessary to remove her appendix, which had become inflamed.

She alleged that she suffered great pain during the entire period covered by her illness and by the disability consequent upon the surgical operation and that, at the time of the filing of the suit on May 23, 1939, she still "suffers from her stom- ach and intestines" and "has to be very careful in the selection of her foods" and that "this condition, according to her phy- sicians, will continue for an indefinite per- iod of time". She averred that she was employed at a salary of $135 per month and has lost $202.50 in earnings. She prayed for judgment for $7,975.10, in- cluding, among the items of damage, bills for hospitalization, doctors, medicines and nurses, totaling $272.60.

Later her husband, John E. Palmer, intervened and alleged that the items to- taling $272.60 were due to him as head and master of the community and had been inadvertently claimed by his wife.

Defendants denied all liability to ei- ther of the plaintiffs, alleging that all the food served to Mrs. Palmer had been pure and wholesome, and calling upon plaintiff and intervenor for strict proof that the said food had been deleterious and had caused the illness of Mrs. Palmer and that the surgical operation had been made necessary by the intestinal disturb- ance from which she had suffered.

The case was tried by jury, which ren- dered two verdicts, one for Mr. Palmer for $190.60 and one in favor of defend- ants dismissing the suit of Mrs. Palmer. From the judgment rendered in accord- ance with these verdicts, the defendants and Mrs. Palmer have appealed.

Defendants make no effort to show that Mrs. Palmer did not suffer a serious in- testinal disturbance at the time set forth, nor do they dispute the assertion that

her medical advisers found it necessary for her to submit to an operation for the removal of her appendix, but they maintain that the plaintiff and intervenor have not shown with reasonable certainty that plaintiff was poisoned by food served in their establishment, nor that the attack of appendicitis was caused by the said food, contending that it is quite logical to believe that the intestinal disturbance was the result of the offending appendix, which, on previous occasions, had caused Mrs. Palmer pain and alarm.

The record shows that, on the evening in question, at about 7 o'clock, Mr. and Mrs. Palmer visited the restaurant of defendants and ordered dinner. Mrs. Palmer, not being satisfied with the entree, asked that a stuffed crab be substituted. She says that when she tasted the crab she "noticed it was oily and just didn't taste just right" and that, after eating about half of it, she called Mr. Palmer's attention to it. He says that he "tried a little of it and advised her to put it aside". She ate no more dinner, but did not realize that she was seriously affected and they said nothing to any of the employees nor to any of the defendant-partners. That night Mrs. Palmer "felt sort of nauseated" and the next morning the nausea continued and she also suffered from diarrhea, but she went to her place of business and attempted to do her work. At about 4 o'clock in the afternoon she was so upset that she notified her husband and he took her home in their automobile. She had chills and fever and intestinal pain and, at about 10 o'clock on that night, Mr. Palmer telephoned to his family physician, Dr. Smith, who did not come in person, but, thinking that Mrs. Palmer was suffering from simple indigestion, gave instructions for home treatment. On the next day the doctor called and found her suffering severely and that her temperature had risen to 104°. He required that a practical nurse be employed and Mrs. Palmer remained under the care of the physician and the nurse for several days. Later the doctor advised that, because of an obviously inflamed appendix, she have that organ removed. This was done.

Dr. Smith, who treated Mrs. Palmer and who removed her appendix, is of the opinion that probably the intestinal disturbance was caused by the deleterious crab meat in the stuffed crab, but he carefully avoids expressing certainty on this point. All that he says is that he had discussed with Mrs. Palmer her diet for the two days preceding that on which she ate the crab and that the crab appeared to him as more likely to have caused such a disturbance than any of the other foods which she had eaten. He said: "A. * * * after looking over the chart and listening to her husband talk the only thing I could possibly or probably refer it back to was some form of crab she had eaten, because that was the only thing I found that was more liable to than anything else."

We also find in his testimony the following statements showing uncertainty on his part:

"A. * * * I haven't said in any way, shape or form that the crab was definitely the cause of the food poisoning. * * *

"A. * * * I have not said the crab was the cause of the trouble; I don't know."

Dr. Silverman, a physician placed on the witness stand as an expert by defendants, did not treat Mrs. Palmer, nor had he even examined her. However, he heard the testimony concerning her symptoms and also learned that when she was admitted to the hospital for preparation for the operation she had given a history of other attacks in the right lower abdominal region during the preceding six or seven years. He was of the opinion that the cause of the stomach upset from which Mrs. Palmer suffered was her susceptibility to inflammation of the appendix and that there was no reasonably certain proof of food poisoning. Dr. Silverman and Dr. Smith agree that, by a microscopic examination of Mrs. Palmer's stool, it might have been determined with certainty whether the food particles which the nurse found and retained for the doctor were contaminated. Of course, Dr. Smith states that at that time he had not been told that there was a lawsuit in prospect and he says that, since he did not know of this, he did not think he was justified in subjecting Mr. Palmer to the expense of a pathological examination of these particles of crab meat.

While it is true that the fact that both Mr. and Mrs. Palmer noticed the strange taste of the crab and that almost immediately after eating a portion of it Mrs.

Palmer became nauseated are suspicious circumstances, they cannot be said to make it reasonably certain that that food was the cause of her condition, particularly in view of her previous history of several attacks due to inflammation of the appendix.

■ In a suit such as this the plaintiff is under the duty of proving with reasonable certainty that the food eaten is deleterious and that the illness ensuing is caused thereby, and all that can be said here is that it has been shown that Mrs. Palmer's condition manifested itself shortly after she had eaten this particular food and that her doctor believed that it was probable that that food had caused her illness. She has not been able to establish these facts with anything resembling the certainty which we thought was shown by the plaintiffs in Ogden et al. v. Rosedale Inn, La.App., 189 So. 162, 164. Though the circumstances here somewhat resemble those found in that case, there were additional facts there which made it seem quite certain that the food eaten was the cause of the illnesses of the several plaintiffs, and there we also found the all-important fact that the trial court had resolved the doubt in favor of the plaintiffs.

In that case there were six persons who ate together in the restaurant and only four of them were made ill. By a process of elimination it was shown rather convincingly that only the four who had suffered had eaten shrimp salad and they otherwise made it to appear with reasonable certainty that that food was the cause of their various intestinal upsettings. But, above all, they were able to convince the district judge, as Mrs. Palmer has not been able to so convince the jury here. Had the finding below been in favor of Mrs. Palmer, we would have found it impossible to characterize that finding as manifestly erroneous, but we find it equally impossible to say that the jury, in returning a verdict for the defendants here, has committed obvious error.

In the Ogden case, supra, we said: "Cases of this type must stand or fall upon their own particular facts."

■ We find the facts here do not justify a reversal of the judgment which was rendered against Mrs. Palmer.

■ When we come to consider the intervention of Mr. Palmer, we find it nec-

essary, of course, to reverse the judgment rendered in his favor because there is no liability in defendants for the expenses which he sustained since it is not shown with reasonable certainty that they were made necessary by unwholesome food served by them.

It is therefore ordered, adjudged and decreed, that the judgment appealed from, insofar as it rejects the claim of Mrs. John E. Palmer, be and it is affirmed, at the cost of plaintiff, and

It is further ordered, adjudged, and decreed that the judgment appealed from, insofar as it runs in favor of John E. Palmer, be and it is annulled, avoided and reversed, and that there now be judgment in favor of defendants and against intervenor, dismissing his intervention at his cost.

Affirmed in part; reversed in part.