85 So.2d 63 (1956)
Mrs. Mary McAVIN, wife of Frederick Bensel
v.
MORRISON CAFETERIA COMPANY OF LOUISIANA, Ltd. and
London Guarantee and Accident Company, Ltd.
No. 20584.
Court of Appeal of Louisiana, Orleans.
February 6, 1956.
Stanley A. Baron, New Orleans, for plaintiff and appellant.
Montgomery, Barnett, Brown & Sessions, New Orleans, for defendants and appellees.
McBRIDE, Judge.
This is a suit for damages resulting from food poisoning which plaintiff alleges was caused as a result of ingesting unwholesome food in the first-named defendant's establishment. Said defendant operates a cafeteria where prepared food is sold to the public for consumption on the premises. Plaintiff alleges that she was rendered *64 ill from having eaten shrimp salad served her in the cafeteria and demands a large amount in damages for her suffering. The lower court gave her judgment for $200 in solido against the operator of the cafeteria and its liability insurer, from which she has appealed seeking an increase in the amount. Appellees answered the appeal praying for a reversal of the judgment and a dismissal of plaintiff's suit.
The defense is that plaintiff's illness was in no way caused by or resulted from her having consumed contaminated food. The answer alleges that the food prepared and served in the cafeteria is always properly prepared and wholesome.
We are in accord with the trial court in his finding that plaintiff was poisoned as she alleges. Between the hours of 1:00 and 2:00 p. m., on June 23, 1954, she entered the cafeteria and ordered a lunch consisting of shrimp salad, rolls and coffee. After consuming a small portion of the salad and discovering that it had an acrid odor and tasted bad, she ate no more of it. She commented to her companions why she did not eat the salad. She says she felt badly that afternoon, went home, and in the evening she partook only of soup and tea for supper. Although her stomach was upset, the next morning she reported to her employer's office for work as usual. At lunch time she ate sparingly. That evening about 4 o'clock she felt worse and found it necessary to her comfort to remove her girdle. Her abdomen began to swell and she experienced nausea, dizziness and perspired freely. She then left her office and proceeded to her home in a taxicab. She claims she vomited almost continuously for at least an hour; her color changed to almost white, her lips became blue, and she fainted, and after regaining consciousness she continued to experience the vomiting and diarrhea and got weaker as time went on. Plaintiff's husband, becoming alarmed, endeavored to summon their family physician but learned that he was out of town. The husband then contacted the Charity Hospital, which sent an ambulance in charge of Dr. K. D. McGinnis to plaintiff's home about 12:15 in the morning. However, plaintiff refused to go to the hospital, whereupon Dr. McGinnis administered a sedative, prescribed certain medicine, and advised plaintiff to remain in bed taking only liquids by mouth as tolerated. The plaintiff states that during the remainder of that night the vomiting and looseness of the bowels persisted and she experienced severe cramps. Her suffering continued for several more days, her condition improved only gradually, and two weeks elapsed before she began to feel normal.
There is no medical testimony in the record. However, by agreement of counsel a statement written by Dr. McGinnis, who saw the plaintiff the one time, was admitted in evidence. The pertinent part of the statement reads:
"Mrs. Bensel gave the history of ingestion of a foodstuff, commonly implicated in conditions such as hers, followed shortly by progressively severe nausea, vomiting and diarrheathis beginning at about 9 P.M. of the preceding evening and continuing until the time of examination. She then exhibited signs of moderately severe dehydration with considerable weakness but with a blood pressure within normal limits. The body temperature was moderately elevated.
"With these findings, the presumptive diagnosis of Staphylococcus toxin gastroenteritis (food poisoning of one type) was made. The patient was given a sedative and a parasympatholytic drug hypodermicallyto decrease gastrointestinal irritability and hypermotilityand she was advised to remain in bed taking only liquids by mouth as tolerated. Hospitalization was not mandatory but she was advised to have her condition followed by her private physician. A medicine with action similar to the one described above was prescribed to be taken orally."
In order to prove that there was no negligence on the part of the operator of the cafeteria, the defendants produced the assistant-manager, who testified that any food served to patrons of the cafeteria which *65 had been mixed with celery and mayonnaise, such as shrimp salad, was disposed of on the very day it was prepared, and that on the day the plaintiff says she became ill no shrimp salad could have been held over from any previous day. The assistant-manager further testified that 122 portions of shrimp salad had been served to customers on June 23, 1954, and that no customer save the plaintiff made complaint about the salad.
Counsel for defendants argue that in view of this testimony emanating from the assistant-manager that plaintiff in order to recover should have proven that other customers consuming the shrimp salad had been stricken as was plaintiff. We do not agree with counsel. Plaintiff carried only the burden of proving that the food which was served to her was deleterious and caused her illness, and we know of no law which would place an additional burden on her of showing that other persons had become ill from eating the shrimp salad. We believe that plaintiff has successfully carried the burden of showing that the shrimp salad was contaminated and caused the food poisoning she sustained.
Defendants' evidence falls far short of showing the cafeteria's freedom from negligence. All that the assistant-manager said was that the custom was to dispose of certain foods on the day they were prepared if not sold in the course of the day's business. But there is no testimony tending to show how the employees of the cafeteria prepared and handled the particular portion of shrimp salad which was served to plaintiff. It may well have been that some employee had been careless in its preparation or perhaps the salad may, notwithstanding the custom the assistant-manager spoke of, have been left over from a preceding day. Perhaps, too, the offending portion of shrimp salad might have been left uniced for a sufficient period of time to permit it to spoil.
This case involves the principle of law that the seller of foodstuffs is bound to warrant their wholesomeness and that every one should know of the qualities of the things he manufactures and sells and that the lack of such knowledge is imputed to him as a fault rendering him liable to the purchaser for any vices or defects of the things. Defendants are clearly liable unto plaintiff for the amount of her damages. Doyle v. Fuerst & Kraemer, Ltd., 129 La. 838, 56 So. 906, 40 L.R.A.,N.S., 480.
We feel that the award of $200 for plaintiff's suffering is inadequate and that the amount should be increased to $400; we are unwilling to allow more because it occurs to us that plaintiff has somewhat exaggerated the extent of her illness. She only remained away from work one day. Although she claims she suffered nineteen days in all, it seems strange that she did not see fit to place herself in the care of a physician. The only medical attention she received was at the instance of Dr. McGinnis who came to her home with the ambulance.
For the reasons assigned, the judgment appealed from is amended so as to increase the amount to $400 and as thus amended and in all other respects it is affirmed.
Amended and affirmed.