202 So.2d 492 (1967)
David B. McCAULEY
v.
MANDA BROTHERS PROVISIONS CO., Inc.
No. 7107.
Court of Appeal of Louisiana, First Circuit.
June 30, 1967.
Rehearing Denied September 27, 1967.
*493 Frank L. Dobson, of McFerrin & Dobson, Baton Rouge, for appellant.
R. Gray Sexton, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for defendant Pak-A-Sak Service Stores, Inc. and The Aetna Casualty & Surety Co.
Joseph F. Keogh, of Franklin & Keogh, Baton Rouge, for defendants Bearden Sandwich, d/b/a Southern Belle Sandwich Co., and Market Ins. Co.
Before LANDRY, ELLIS, and BAILES, JJ.
ELLIS, Judge.
Plaintiff herein, David B. McCauley, suffered an acute attack of gastroenteritis at about 2:00 or 2:30 on the afternoon of June 17, 1965. At approximately noon on the same day, he had purchased from a Pak-A-Sak store at 8731 Jefferson Highway in East Baton Rouge Parish, a hot sausage sandwich, which had been manufactured by Bearden Sandwich Company, Inc., d/b/a Southern Belle Sandwich Company, and distributed by it to the Pak-A-Sak store. The hot sausage in the sandwich had been manufactured by Manda Brothers Provisions Company, Inc., which had sold it to Bearden.
Immediately after purchasing the sandwich, plaintiff consumed same with some milk, which he had purchased at the same time. The only other food ingested by him that day had been a slice of coconut pie which he had eaten at approximately 8:00 or 8:30 for breakfast.
After consuming the sandwich, plaintiff continued with his work until he began to feel ill, at the time above indicated. He went home where he continued to suffer increasing distress. At about 5:00 p.m., he was taken to the hospital where he was seen by Dr. D. C. Hutchinson. After obtaining a history of the patient, Dr. Hutchinson was of the opinion that he was suffering from acute gastroenteritis and attributed the illness to the above sandwich. Plaintiff remained in the hospital until early on the morning of June 19, when he was discharged. He suffered no further distress as a result of this incident.
This suit was brought against Pak-A-Sak Service Stores, Inc., and its insurer Aetna Casualty Insurance Company; Bearden Sandwich Company, Inc., d/b/a Southern Belle Sandwich Company and its insurer, Market Insurance Company; and Manda Brothers Provisions Company, Inc. and its insurer Fidelity and Casualty Company of New York.
After trial on the merits, judgment was rendered in favor of plaintiff and against Pak-A-Sak, Bearden, and their insurers, solidarily, for $729.00, and dismissing the suit as to Manda Brothers. From that judgment, Pak-A-Sak and Bearden, and their insurers, have taken suspensive appeals.
The history of the manufacture of the sausage, and the sandwiches made therefrom, and their distribution to the retailers is, briefly, as follows:
The sausage is manufactured by Manda Brothers at a packing plant in Zachary, Louisiana. The meat which goes into the sausages is bought from two federally inspected meat packing houses and is maintained at temperatures low enough to prevent the propagation of bacteria therein. Except when it is cooked, the meat and other sausage ingredients are kept at temperatures below 40 degrees F., which is sufficiently low to prevent the growth of bacteria. When cooked, the sausage is heated to an interior temperature of 152 degrees F., which is 10 degrees above the temperature at which all bacteria are killed. Thereafter, it is cooled and maintained at temperatures below 40 degrees. It is delivered from the meat packing house to the customer, in this case Bearden, in refrigerated trucks which maintain the sausage at the desired low temperature.
After being received by Bearden, the sausage is maintained refrigerated until it is boiled, which once again brings it to a *494 temperature high enough to kill any bacteria which might be therein. Subsequently, it is placed on a bun with some catsup and is packaged in a cellulose wrapper which is folded over the sandwich and stapled closed. The package is not hermetically sealed, however. The sandwiches are manufactured at approximately 8:00 o'clock at night and are kept in an air conditioned room until picked up by the trucks for distribution to retail centers. Delivery is generally made prior to 7:00 o'clock in the morning. In some stores, the sandwiches are actually placed on the shelves by the delivery men; and in others, are delivered in boxes and placed on the shelves by the personnel in the store. The sandwiches are dated by having the day of the week on which they must be sold printed on the label. No sandwiches are allowed to remain on the shelves for more than one day, and any unsold sandwiches are picked up on the morning after their delivery, when a fresh supply of sandwiches is delivered to the store. At the particular Pak-A-Sak store involved in this case, the sandwiches were delivered in a box and placed on the shelves by store personnel.
There is further evidence to the effect that approximately 210 hot sausage sandwiches were manufactured each day by Bearden and distributed for sale. Apparently, these sandwiches are distributed throughout the Baton Rouge area by Bearden. The evidence also shows that all of the sausage used in making hot sausage sandwiches by Bearden was purchased from Manda Brothers.
The only other evidence of any import was a proffer by plaintiff of the testimony of two witnesses who would have testified that they purchased hot sausage sandwiches manufactured by Bearden about noon on June 17, 1965, from locations other than that at which plaintiff purchased his; that they consumed these sandwiches, and that they became ill about the same time as plaintiff. This testimony was excluded by the district judge, and appears in the record by way of offer of proof. In view of the fact that these sandwiches necessarily had to be manufactured at the same time as the one which was consumed by plaintiff, and under exactly the same conditions, we feel that the testimony was admissible and that the district judge erred in excluding it.
There also appears in the record the results of a series of tests run on hot sausage sandwiches manufactured by Bearden and picked up by the Health Department on the day following the incident, showing a concentration of staphylococci bacteria far in excess of appropriate minimum standards. On the other hand, a test run at the same time on the sausage alone prior to being packed in a sandwich showed that it was well within acceptable limits. This latter testimony was admitted by the court over the objection of counsel to its relevancy. This objection should have been maintained by the trial court, since the materials tested were not processed at the same time as those involved in this case.
Based on all of the foregoing, the trial court found that plaintiff's illness was indeed due to the ingestion of the hot sausage sandwich. He further found that, since the sausage was cooked by Bearden at a temperature high enough to kill all bacteria therein, the presence of staphylococci in the sausage could in no way be attributed to the fault of Manda Brothers.
Pak-A-Sak maintains that the trial court erred in holding that a retailer of prepackaged materials is liable for injury resulting from consumption thereof when it is shown to be unwholesome or deleterious. Bearden takes the position that the plaintiff has not carried the burden of proof in showing that he was injured by consumption of the sandwich, or that the sandwich was unwholesome. It further urges that the retailer should be found liable.
Louisiana cases relative to the liability of a manufacturer or processor of food products fall into a number of general categories. Probably the largest category of these *495 cases cover food products which are sold in sealed containers, such as capped bottles or cans. Among those cases are Hill v. Louisiana Coca-Cola Bottling Co., 170 So. 45 (La.App.Orl.1936); Freeman v. Louisiana Coca-Cola Bottling Co., 179 So. 621 (La. App.Orl.1938); Nichols v. Louisiana Coca-Cola Bottling Co., 46 So.2d 695 (La.App. Orl.1950); Mayerhefer v. Louisiana Coca-Cola Bottling Co., 219 La. 320, 52 So.2d 866 (1951); LeBlanc v. Louisiana Coca-Cola Bottling Co., 221 La. 919, 60 So.2d 873 (1952); Givens v. Baton Rouge Coca-Cola Bottling Co., 182 So.2d 532 (La.App. 1 Cir. 1966).
The Supreme Court, in the LeBlanc case, supra, based the liability of the manufacturer in such cases on implied warranty rather than negligence and required a plaintiff to prove that he purchased the product in an apparently undisturbed container, that it contained a foreign substance, that the product was consumed and that an injury resulted therefrom. The practical effect of the above ruling is to impose strict liability on the manufacturer in such circumstances.
A second category of cases are those in which the food product is prepared and sold for public consumption in restaurants, or across the counter in bakeries, confectionaries, and similar places. These cases include the well known case of Doyle v. Fuerst & Kraemer, 129 La. 838, 56 So. 906, 40 L.R.A.,N.S., 480 (1911); Lee v. Smith, 168 So. 727 (La.App. 1 Cir. 1936); Mac-Lehan v. Loft Candy Stores, 172 So. 367 (La.App.Orl.1937); Kelly v. Ouachita Dairy Dealers Cooperative Assn., 175 So. 499 (La.App. 2 Cir. 1937); Ogden v. Rosedale Inn, 189 So. 162 (La.App.Orl.1939); Palmer v. Rosedale Catering Co., 195 So. 859 (La.App.Or.1940); McAvin v. Morrison Cafeteria, 85 So.2d 63 (La.App.1956); Gilbert v. John Gendusa Bakery Inc., 144 So.2d 760 (La.App. 4 Cir. 1962); and Love v. New Amsterdam Casualty Company, 175 So.2d 398 (La.App. 4 Cir. 1965).
Liability in these cases is based on the proposition that the manufacturer-seller of unwholesome food is presumed to know its condition and is liable to the purchaser thereof who is made ill because of its consumption. As stated in the McAvin case, supra.
"This case involves the principle of law that the seller of foodstuffs is bound to warrant their wholesomeness and that every one should know of the qualities of the things he manufactures and sells and that the lack of such knowledge is imputed to him as a fault rendering him liable to the purchaser for any vices or defects of the things."
In these cases, the plaintiff carries the burden of showing that the food consumed was unwholesome or deleterious, that it was consumed, and that illness resulted therefrom.
It would appear that the liability imposed by the Doyle case and the others cited is also one which is based in implied warranty, rather than tort, since there is no necessity for the plaintiff to show negligence on the part of the manufacturer or processor. We find that this case, in which the food product in question is prepackaged but not sealed, having been wrapped in a sheet of plastic which was stapled closed, falls into the latter category of cases.
The courts have never compelled a plaintiff to produce an actual analysis of the food consumed in order to establish its unwholesome condition. Rather, the courts have been willing to infer the deleterious nature of the food consumed from the circumstances surrounding the illness. In all of the cases in which there has been successful recovery, the plaintiff has shown that the food was consumed by him, and that no other food which might reasonably be assumed to have caused the illness had been consumed within a number of hours before or after the consumption of the suspect product. The plaintiff has also had medical opinion to the effect that it was probable that his illness was caused by the *496 consumption of the particular product involved. In addition, the successful plaintiffs in the above cases have been able to show some other independent circumstance, which tends to prove his case. In the Doyle case, supra, for instance, it was shown that the plaintiff's companion, who ate in the same place at the same time of the same products also became ill. In the MacLehan case, supra, the plaintiff partook of the same pie on two different occasions, and got sick on each occasion. In the McAvin case, supra, the plaintiff noticed that the shrimp salad involved had a bad odor and taste and ate only a small portion of it. In Ogden v. Rosedale Inn, supra, only those persons who consumed the suspect salad became ill. In the cases of Love v. New Amsterdam Casualty Company, supra, and Gilbert v. John Gendusa Bakery, Inc., supra, foreign substances were found in the food consumed.
In this case, plaintiff showed that he had had nothing to eat on the day of his illness except the slice of coconut pie which he had for breakfast some six hours prior to his illness. He testified that he was feeling well until shortly after he consumed the hot sausage sandwich and a carton of milk. No proof has been offered by any party to this case relative to the unwholesomeness of the milk. His physician testified that in his opinion the attack of acute gastroenteritis suffered by plaintiff was caused by the ingestion of the hot sausage sandwich. He was prepared to prove, and did in fact proffer evidence to the effect that two other persons, who consumed sandwiches which were made at the same time and under the same conditions as that consumed by him suffered similar illnesses.
The procedure followed by the trial court in taking the proffered testimony was to allow the plaintiff's counsel to make a verbal statement as to what he intended to prove by the witnesses, and to then allow other counsel to cross examine the witnesses. No stipulation as to the content of the direct testimony was entered into by counsel.
Article 1636 of the Code of Civil Procedure provides as follows:
"When a court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. In all cases the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality.
"If the court permits a party to make a complete record of the evidence held inadmissible, it shall allow any other party to make a record in the same manner of any evidence bearing upon the evidence held inadmissible."
It is clear from the above that the trial judge has the option of allowing a complete record of the proffered testimony to be made, or to merely permit a statement thereof to be placed in the record. If the latter course is followed, the appellate court is in a position to rule on the admissibility of the evidence, but cannot give it any probative value. If, therefore, the testimony is found to be admissible and essential to a decision in the case, a remand to the trial court becomes necessary to permit the excluded testimony, and any other testimony bearing thereon to be taken.
The procedure followed by the court in this case falls into the latter category. The fact that the witnesses were tendered for cross examination does not change the fact that their affirmative testimony on a matter important to a decision appears nowhere in the record. Very obviously, the statement made by counsel as to what he intended to prove by the witnesses went far beyond what they could testify to, involving matters such as bacterial infestation of which the witnesses could have no direct knowledge.
We now pass on to the question of the liability of the retailer, Pak-A-Sak. As *497 pointed out above, the evidence in this case indicates that the sandwich in question was delivered to the Pak-A-Sak store in a box along with a number of other sandwiches. It was taken from the box and placed on the shelf by employees of the Pak-A-Sak store, but no showing is made by any party that they in any way tampered with or altered the condition of the sandwich or its wrapper. The sandwich was actually taken from the shelf, opened, and consumed by the plaintiff. It is also made clear that the Pak-A-Sak store complied with all regulations of the Health Department of the City of Baton Rouge. A careful scrutiny of the record has failed to show that there is any evidence before the court to indicate any negligence whatsoever on their part.
Therefore, if liability is to be found on the part of Pak-A-Sak, it must be based on a theory of warranty.
Under our law, the vendor of a thing impliedly warrants that it is fit for the purpose for which it is intended. However, he cannot become liable in damages unless it is shown that he knows or should know of the defect existing therein. Louisiana Civil Code, Articles 2475, 2476 and 2545.
The only two cases in Louisiana dealing with this question are the cases of Lesher v. Great Atlantic and Pacific Tea Company, 129 So.2d 96 (La.App. 2 Cir.1961), and Gilbert v. John Gendusa Bakery, Inc., 144 So. 2d 760 (La.App. 4 Cir. 1962). The Lesher case involved the purported liability of a retail store for the injuries resulting from the consumption of canned peas purchased therefrom. The court held in that case that in the absence of a showing that the defendant had taken part in the preparation, processing or manufacturing of the product, or that they had been subjected to improper care, or that there was an express warranty made by them, there was no basis in our law for a holding that they could be held liable on an implied breach of warranty.
In the Gilbert case, supra, plaintiff's child purchased jellied doughnuts in an unsealed container from a retail establishment which was not the manufacturer of the product. In that case, the court said:
"In cases of this type, the manufacturer and the vendor of foodstuff designed for human consumption, both, are virtually insurers that such merchandise is pure, wholesome and free from foreign materials and deleterious substances. We find that there was a breach of implied warranty that these doughnuts were wholesome and fit for human consumption. See MacLehan v. Loft Candy Stores, La.App., 172 So. 367."
The MacLehan case is not authority for the proposition for which it is cited, and we are unable to find any other Louisiana authority which so holds relative to a nonmanufacturing vendor of food stuffs.
We therefore hold that, in the absence of negligence or knowledge of the defect or unwholesomeness of the product sold, a retailer of a pre-packaged food product, which is not the manufacturer thereof, sold for public consumption, cannot be held liable for injuries resulting from the consumption thereof.
We are aware that strict liability has been imposed on retailers in a situation such as this in a great many jurisdictions. See William L. Prosser, "The Fall of the Citadel", 50 Minnesota Law Review 791. However, in this state, under our civil law regime, we are bound by the legislative provisions relative to such matters.
For the foregoing reasons, we are of the opinion that the judgment appealed from is correct insofar as the dismissal of Manda Brothers is concerned, and same is hereby affirmed. We are further of the opinion that the judgment as to Pak-A-Sak Service Stores, Inc. and Aetna Casualty and Surety Company must be reversed, and plaintiff's suit as to them be dismissed. The judgment as to Bearden is hereby reversed, and the case remanded to the trial court for the *498 limited purpose of receiving the evidence proffered by plaintiff and improperly excluded by the trial court, and for decision in line with the views herein expressed. All costs of this appeal to be shared equally by plaintiff and Bearden.
Affirmed in part, reversed in part, and remanded.