439 So.2d 1147 (1983)
Mrs. Evelyn Jackson, wife of Anteal JACKSON, et al.
v.
WINN DIXIE STORES, INC.
No. CA-0746.
Court of Appeal of Louisiana, Fourth Circuit.
October 6, 1983.
*1148 Meyer Sabludowsky, New Orleans, for plaintiff-appellant.
Dan R. Dorsey, Terry M. Boudreaux, River Ridge, for defendant-appellee.
Before BARRY, KLEES and WILLIAMS, JJ.
BARRY, Judge.
Plaintiffs' claim for damages based upon eating deleterious food purchased from the defendant grocery was dismissed because "... the short ribs purchased by the plaintiff were not contaminated nor the cause of the food poisoning organisms which unquestionably caused the plaintiffs' minor discomfort.... [T]he resulting illness was caused by the negligence of Evelyn Jackson in the refrigeration and/or preparation of the beef short ribs."
At noon on Saturday, August 15, 1981 plaintiff Mrs. Evelyn Jackson purchased six packages of beef short ribs from Winn Dixie. She went directly home and placed the ribs in a freezer until 5:30 a.m. the next morning when the meat was defrosted until 9:30 a.m. Mrs. Jackson testified she cooked the ribs for 2½ to 3 hours and at approximately 1:00 p.m. the plaintiffs JoAnn Jackson, Diane Williams, Lorraine Jackson, Evelyn Jackson, and the minor Wayne Jackson ate the ribs for lunch.
There is a dispute as to whether the ribs were refrigerated after lunch or remained on the stove until that evening at 6:00 p.m. when the meat was heated and served for dinner to the same family members and also to Walter Jackson. Mrs. Jackson said after lunch she removed the ribs from the pot and refrigerated them in a clean container until supper. In her deposition, Diane Williams said the ribs were left on the stove all afternoon and that she had eaten the ribs at lunch and dinner. At trial, Williams contradicted both statements and denied she ate dinner or that she had any knowledge whether the ribs were left unrefrigerated after lunch. That evening between 9:00 and 11:00 p.m. all of the plaintiffs became ill with cramps, nausea, vomiting, and diarrhea. Everyone went to Charity Hospital emergency room for treatment except Walter who saw his personal physician, Dr. Tontiplaphol.
Plaintiffs contend the trial judge committed manifest error in basing his decision on the expert testimony of Dr. Brobson Lutz. They assert Dr. Lutz's opinion was "highly speculative ... a matter of conjecture" and premised on the erroneous assumption that the food was left unrefrigerated on the stove all afternoon. They argue it was proven the ribs were the only food consumed and since all six plaintiffs became ill at the same time, the court should infer the ribs were the direct and proximate cause of their injuries, citing McCauley v. Manda Bros. Provisions Co., 202 So.2d 492 (La.App. 1st Cir.1967) affirmed 252 La. 528, 211 So.2d 637 (1968). Defendant does not question that plaintiffs suffered from food poisoning. The issue is the cause of the food contamination.
Plaintiffs' burden is to establish by a preponderance of evidence that the meat was in a deleterious condition when purchased and caused their illnesses. English v. Louisiana Creamery, Inc., 181 So.2d 800 (La.App. 1st Cir.1965). A plaintiff need not negate every conceivable cause nor produce a scientific analysis of the alleged contaminated food. Proof must only show that it is more likely than not that the alleged deleterious food caused the illness. McCauley, supra; Tate v. Winn Dixie of Louisiana, Inc., 339 So.2d 1329 (La.App. 1st Cir. 1976).
*1149 The most persuasive evidence, which was obviously relied on by the trial judge, was the unrebutted testimony of Dr. Brobson Lutz, an eminently qualified expert in internal medicine with expertise in public health and infectious diseases.[1] Dr. Lutz said freezing was a very effective way to sterilize meat and keeping the meat in the freezer would destroy any bacteria. He also testified that boiling or cooking any food for the amount of time Mrs. Jackson reported would kill existent bacteria and toxins. Therefore, according to Dr. Lutz and based on Mrs. Jackson's testimony, her handling of the meat up to lunch time would have effectively eliminated bacteria that might have been present when it was purchased from Winn Dixie.
In addition, it was Dr. Lutz's opinion, based on the time to onset of symptoms (four to six hours) and the symptoms themselves (cramps, nausea, vomiting and diarrhea), the most likely cause of the food poisoning was clos perfringens, or ptomaine poisoning. He stated this is common where the meat is cooked and browned in its own juices (as here) because the gravy provides an excellent medium for the organism to grow. Plaintiff asserts this conclusion is based on the inaccurate assumption that the ribs were left out all afternoon.
The trial judge made the factual determination that the ribs remained unrefrigerated from lunch until dinner. When Dr. Lutz was asked whether one person (Diane) could eat the ribs at 1:00 p.m. and another (Walter) at 7:00 p.m. and all develop the same problems at the same time, he replied: "No.... [T]hat fits no known food poisoning syndrome that I know of." Dr. Lutz admitted he could not positively identify the organism without a sample but "where you have several people in one family who became sick several hours after eating a piece of meat that was prepared on the top of the stove and probably remained on top of the stove, you're talking about clos perfringens." He stated the cause was "contamination of the food after cooking" and not due to any quality existing in the meat when sold "because the bacteria that makes the toxin would be destroyed by freezing, they would be destroyed by three hours of cooking." Dr. Lutz unequivocally said "I know of no instance of thisthis is based on my training and on my reading and on my personal practice and my work with the City Health Department at New Orleans. I know of no instance in which a gastrointestinal disease of this short duration following an ingestion of a meat problem was caused by anything but improper handling and the type of cooking." Regarding the weight Dr. Lutz gave to the assumption that the ribs were not refrigerated after lunch, he stated even if refrigerated in a large enough container, the inside temperature would be ideal for the growth of bacteria for approximately 24 hours. Thus, refrigeration after lunch would not be conclusive in plaintiffs' favor.
We note Mrs. Jackson testified when she reheated the ribs for dinner she "warmed it up" for about 15 minutes and did not bring it to a boil. Whether the ribs were unrefrigerated all afternoon was immaterial to Dr. Lutz's opinion that the organism was close perfringens based on the symptoms, the number of people involved, the food involved, the overnight freezing and the three hours of cooking. He said if the poisoning was due to clos perfringens then the organism had to enter between cooking and cooling. "Now, that implies contamination to me because these clos perfringens don't fall out of the air. They have to be put in there. And it's usually contamination from improper hand washing or from using utensils that have been used with a salad or poured into a receiving bowl that was not cleaned .... [I]t's the result of food contamination after cooking."
On cross-examination Dr. Lutz was asked whether an examining physician would be in a better position to evaluate this situation. Dr. Lutz responded that while this was true for much of medicine, cases of food poisoning are "historically a retrospective *1150 type of examination and the examination of the individual person actually adds very little to the case in tracking down food poisoning." He was convinced the plaintiffs' suffering was caused by improper food handling after it was cooked and not by the condition of the meat at the time of purchase.
The record clearly shows the trial judge was not impressed with the testimony or the demeanor of the plaintiffs and the court believed the unrebutted testimony of Dr. Lutz that the source of contamination was improper handling of the meat after cooking. We find no error in that conclusion.
The judgment of the district court is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] Dr. Lutz stated he was chief of communicable diseases (apparently for the City of New Orleans). He stated any outbreak of food borne infectious diseases is reported to his office.