KLEES, Judge.
This appeal arises from a construction contract entered into between Leonard B. Hebert, Jr. and Co., Inc. (“Hebert”), the general contractor, and George Swindell, d/b/a Diamond Realty Construction (“Swindell”), the subcontractor.
Hebert contracted with the Martin Marietta Corporation to perform the mechanical, electrical and metal roofing and siding work in connection with the construction of Cell “M”, part of Phase III of the Horizontal Spray Facility contained at the NASA/Michoud Assembly Facility. Cell M was designed to be a weathertight and airtight metal structure able to withstand a negative pressure to house the spray facilities for the external fuel tanks of the NASA Space Shuttle Program.
The subcontractor, Swindell, entered into a fixed price subcontract with Hebert for $28,000.00 to install the metal siding and roofing components and perform related work on Cell M. Steelite Inc. fabricated the roofing and siding materials utilized by Swindell for the work and also prepared the shop drawings. Tri-Clad South, Inc., the local manufacturer’s representative of Steelite, coordinated and sold these materials to Hebert, who provided them to Swin-dell.
Swindell began installation of the metal roofing and siding on December 12, 1981. On March 29, 1982, prior to completion of the job, Swindell was terminated by Hebert for an alleged breach of performance of the subcontract. Hebert claimed that Swindell had failed to install certain caulking without which the structure was useless. After firing Swindell, Hebert retained Hercules Sheet Metal Works, Inc. to perform the necessary work to complete the roofing and siding installation.
On June 29, 1982, Swindell filed suit against Hebert and Martin Marietta to recover $83,329.60, which plaintiff alleged represented the actual cost of his work, including all extras, plus ten percent overhead and ten percent profit, less $5,137.99 which had been previously paid to him by Hebert.
The case was tried before a judge for six days in November of 1987. After trial, the district court ruled that Swindell had not breached his performance under the subcontract because the general contractor’s architects and draftsmen had failed to develop clear and instructive plans and specifications. Moreover, the trial judge found *485 that the “dictatorial policies” [1] of Shelby Smith, the overseeing superintendent employed by Hebert, had prevented the plaintiff from performing his duties under the terms of the written subcontract, as well as under the terms and conditions of the verbal change orders. Finally, the trial judge found that Hebert was liable for additional sums owed to the plaintiff above and beyond the contract price because Hebert had assured the plaintiff of full compensation for whatever services or tasks had to be performed in furtherance of the contract. The judge then awarded the plaintiff $83,-000.00, which he determined to be the amount still due from Hebert.[2]
From this judgment, Hebert has appealed. Although defendant has alleged several specifications of error, we find one to be dispositive of the case at his juncture. Hebert contends that the trial judge erroneously excluded certain material, relevant testimony of several of Hebert’s witnesses, thereby severely prejudicing his case. After examining the record, we agree that this evidence was wrongfully excluded.
John P. Daniel, the Facilities Construction Supervisor for Martin Marietta, whose responsibility was to assure that the project was constructed in accordance with the plans and specifications, was not allowed to testify as to whether caulking was present in the structure. The sole reason' given by the trial judge for refusing to allow this testimony was that there was no privity of contract between Daniel’s employer, Martin Marietta, and Swindell. This reasoning ignores the obvious relevancy of Daniel’s testimony, as well as his value as a disinterested factual witness. The trial judge also erroneously refused to allow Daniel to give opinion testimony as an expert in commercial metal roofing and siding, despite his clear qualifications. Finally, Daniel was not allowed to testify concerning his knowledge of Swindell’s discharge, his experience with Swindell, or his opinion as to the quality of Swindell’s work, despite the fact that the Hebert-Swindell subcontract refers to Martin Marietta, and that Martin Marietta was expressly permitted to inspect, test, examine, reject or accept the subcontractor’s work.
In addition to Daniel, the trial judge did not allow Lee J. Dorsey, the president of Tri-Clad South, Inc., to testify concerning his inspection of Swindell’s work on several visits to the job site. Tri-Clad South supplied the metal roofing and siding materials used by Swindell. Samples of those material were not allowed to be introduced as evidence by the trial court.
George O. Daigle of Regal Iron Works was the subcontractor engaged by Hercules to perform the corrective and remedial work on the project after Swindell’s discharge. The trial court refused to allow Daigle to describe the details of the remedial work performed or to give his estimate of the value of the work. The trial judge stated that he was only interested in the actual cost of the remedial work, which amount ($43,332.50) was placed into evidence. This exclusion of testimony is wrongful in view of its relevancy to Hebert’s claim for reimbursement for this amount.
Wilfred P. Tauzier, the immediate supervisor of Shelby Smith, was not allowed to testify concerning Ms. Smith’s performance, even though Tauzier observed her work on a daily basis. This exclusion is particularly disturbing in view of the fact that the trial court expressly based his judgment on Ms. Smith’s “dictatorial policies” in “taking over” Swindell’s job.
Benny P. Trahan, a foreman for Walter J. Barnes Electric Company, Inc., which performed the electrical work on Cell M., also was not allowed to testify concerning his relationship with Shelby Smith or his observations of her performance.
The testimony of Slattery R. Aleman, a consultant to Hebert, was also excluded. His testimony would have concerned other bids received for the roofing and siding *486 work and Hebert’s in-house estimate of its value.
Finally, the trial judge refused to admit into evidence the Construction Project Chart introduced by Hebert 'which contained the required time schedule for Swin-dell’s work. The basis for the trial court’s refusal to admit this obviously relevant evidence was that Swindell did not participate in negotiating the time schedule. Nevertheless, Swindell unequivocally accepted the time schedule when he signed the subcontract, which referred to the time requirements. Under the circumstances, this evidence was wrongfully excluded.
All of the excluded evidence was proffered by Hebert, thus preserving his objection for appeal. However, rather than allowing the proffered testimony to be taken during the trial and the witnesses be subjected to cross-examination, the trial court required that each proffer be made by written statement submitted to the court after the trial. Defendant submitted affidavits of the aforementioned witnesses stating the facts to which each would testify.
After reviewing these affidavits, we find that they contain probative evidence which is relevant to the major issues in this case. We do not find it to be repetitive, but only corroborative of defendant’s other evidence. The fact that these witnesses were not part of the contract between Swindell and Hebert has no bearing upon the relevancy or materiality of their testimony. John Daniel was on the jobsite daily as the owner’s representative; it was his duty to observe and review the performance of contractors and subcontractors, including Swindell. Swindell’s performance is the central issue in this case. Similarly, George Daigle actually participated in the remedial work performed to correct alleged mistakes made by Swindell. Wilfred Tauzier and Benny Trahan had personal experience on the same jobsite with Shelby Smith, whose alleged “taking over” of the job was one of Swindell’s primary defenses.
Under the circumstances, we find the trial court’s exclusion of obviously relevant testimony and evidence for no valid reason was unduly prejudicial to defendant’s case. Moreover, we cannot fairly decide the case absent the actual testimony and cross examination. Therefore, we have no choice but to remand the matter back to the trial court. See McCauley v. Manda Brothers, 202 So.2d 492 (La.App. 1st Cir.1967), aff'd, 252 La. 528, 211 So.2d 637 (1968).
Accordingly, for the reasons given, we remand the case to the trial court for new trial.
REMANDED.

. See Judgment of Trial Court, at p. 2.

. Martin Marietta was dismissed from the suit on a peremptory exception of no cause of action.