542 So.2d 710 (1989)
David GRIFFIN
v.
SCHWEGMANN BROTHERS GIANT SUPERMARKETS, INC.
No. 88-CA 1234.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1989.
*711 George R. Blue, Jr., Blue, Williams & Buckley, Metairie, for appellant.
Orlando G. Bendana, Bendana & Carlton, New Orleans, for appellee.
Before GARRISON and CIACCIO, JJ., and PRESTON HUFFT, J. Pro Tem.
CIACCIO, Judge.
Schwegmann Giant Supermarket, Inc. (hereafter referred to as Schwegmann) appeals a judgment which awarded David Griffin damages for personal injuries received when he allegedly consumed adulterated food purchased from defendant's store. Since we find plaintiff failed to prove his case, we reverse the judgment of the district court on the main demand. We affirm the judgment on the third party demand which sought indemnification and we amend the judgment on the third party demand to provide for recovery by Schwegmann against Aetna Casualty & Surety Co. for its failure to provide a defense and remand that portion of this case to the district court for a hearing to determine the amount owed under that obligation.
On appeal Schwegmann alleges that the trial court erred in: (1) finding the plaintiff proved causation; (2) failing to find that Aetna owed it a duty to defend and indemnify; and (3) awarding excessive damages.
On August 13, 1986 plaintiff was employed as a truck driver for the American Beauty Company, and in that capacity he made a delivery of products to the defendant's St. Claude Street store. According to the plaintiff's testimony, at between 8 and 8:30 a.m., while he was in the store, he purchased two hot dogs with chili and a coke. He consumed the food about one-half hour later, at about 9 a.m., and thereafter at approximately 11 a.m. he began to experience severe stomach pains.
The stomach pain was followed by an episode of vomiting and diarrhea. The vomiting and diarrhea persisted, and plaintiff continued working until 4 or 5 p.m., went home and continued to suffer from vomiting and diarrhea. The next day, August 14th, plaintiff went to the St. Claude General Hospital at approximately 5:15 p.m. that evening. At this hospital the plaintiff had his stomach pumped, sample tests were run, and an x-ray series was taken in order to ascertain why the plaintiff was bleeding from the abdominal area. About 9 p.m., because he had no medical insurance, he was transferred by ambulance to Charity Hospital where he was administered an I.V. and his stomach was again pumped. He remained at Charity from 9:15 p.m. until 4 a.m. on August 15, 1986. He was released and told to stay on water and medications until Saturday. He missed 5 days of work as a result of his illness. He returned to Charity Hospital on August 25 and September 2, 1986. On September 2, 1986 an upper G.I. series was run.
The plaintiff's medical records indicate that he was diagnosed as having gastroenteritis. The test results were inconclusive as to gastric contents other than the presence of occult blood and the fact that no pathogens were isolated.
*712 Plaintiff filed this suit seeking damages for his injuries, alleging that the food he consumed was "adulterated and toxic." The supermarket filed third party demands against the manufacturer of the hot dogs, L.A. Frey, and against the manufacturer of the chili, FDL Foods, Inc., d/b/a Dubuque Foods, Inc., and its insurer alleging the unfitness of the food product and seeking indemnity and a defense under its liability policy.
In its first assignment of error Schwegmann's alleges that the trial court erred in rendering judgment in favor of the plaintiff, since he failed to prove causation. We agree.
In establishing liability for the consumption of deleterious food the plaintiff must prove the product was in a deleterious condition when purchased and caused his illness. Prejean v. The Great Atlantic & Pacific Tea Co., 457 So.2d 60 (La.App., 4th Cir., 1984); Jackson v. Winn Dixie Stores, Inc., 439 So.2d 1147 (La.App., 4th Cir., 1983). In such cases, it is not necessary for the consumer to negate every conceivable cause but he must show that it is more likely than not that the food's condition caused the injury of which he complains. Prejean v. The Great Atlantic & Pacific Tea Co., supra; Jackson v. Winn Dixie Stores, Inc., supra.
The plaintiff alleges that he "became violently ill due to the adulterated and toxic food which he had purchased from defendants." In order to prove his claim, he offered his own testimony and the medical records from St. Claude and Charity Hospitals. He offered no expert testimony as no doctors were subpoenaed to testify.
In testifying the plaintiff did not state that there was anything unusual in the taste or appearance of the hot dogs. Although he said he had eaten toast and coffee for breakfast, he could not recall what he had eaten the night before, but he remembered that he had had a full meal.
In their defense, Schwegmann offered testimony of several employees to show that the hot dogs and chili were received and refrigerated in proper fashion, that the procedures for cooking the chili dogs and sanitizing the cooking utensils were adequate and that no other complaints had been received regarding chili dogs consumed on that date.
Based upon this evidence the trial judge found Schwegmann liable and stated:
The Court specifically finds that the food that was consumed by Mr. Griffin at the Schwegmann Brothers store as described above for whatever reason was not wholesome and was in fact the cause of the stomach problems that he sustained thereafter.
It is apparent that the trial judge was unable to determine why the food was not wholesome, nor was he able to determine the exact nature or cause of the plaintiff's illness, particularly in the absence of competent medical testimony.
The plaintiff had the burden of proving that he had suffered food poisoning and that it was caused by the food he had purchased from Schwegmann. However, the plaintiff failed to prove that his illness, diagnosed as gastroenteritis, was more probably than not the result of food poisoning.
There was no proof offered that the chili dogs were deleterious when purchased and consumed. Additionally, the plaintiff offered no medical testimony that he actually suffered food poisoning. The medical records of both hospitals indicated that plaintiff was suffering from gastroenteritis but there was no expert testimony that this condition was the result of food poisoning. Rather, the medical records would indicate to the contrary. That is, the plaintiff was diagnosed as having gastroenteritis of an unstated origin. Additionally, the lab tests results admitted into evidence revealed the presence of blood, but no pathogens were indicated.[1]
If the plaintiff had proven the presence of food poisoning, given the food consumed *713 and the time frame of the onset of his symptoms, it may have been reasonable for the court to conclude that the chili dogs caused the condition. But it was mere speculation to conclude that the gastroenteritis resulted from food poisoning instead of some other cause. Under these circumstances the trial judge was clearly wrong when he concluded that the food purchased from Schwegmann was "not wholesome and was, in fact, the cause of the stomach problems." No such factual basis for this conclusion appears in the record before us.
Since we conclude that the plaintiff failed to prove his case we reverse the trial court judgment which awarded damages to the plaintiff. Additionally, as a result of this conclusion the third assignment of error, which questions the adequacy of that award, is moot.
In the final assignment of error Schwegmann contends that the trial court erred in failing to find that Aetna Casualty & Surety Company (hereafter referred to as Aetna) owed them indemnity and a duty to defend.
Since we found that the plaintiff failed to prove his case and hence, there exists no liability on the part of the defendants, the issue of their indemnification is moot.
We find merit, however, in the allegation that Aetna owed Schwegmann a defense in this litigation. The trial court did not address this issue in its reasons for judgment nor in its judgment.
In their third party demand Schwegmann made the following allegations:
6.
Aetna Casualty & Surety Company was the comprehensive general liability insurer of FDL Foods, Inc. on August 13, 1986 covering all liability arising unto FDL Foods, Inc., and any and all liability, if any, of all vendors pursuant to the broad form vendors' endorsement to the FDL policy issued by Aetna Casualty & Surety Company in effect on August 13, 1986.
7.
In addition to indemnification pursuant to the Aetna policy as a result of Schwegmann serving as a vendor of FDL's products, Aetna is also responsible unto Schwegmann for all costs of defense, including attorney's fees, and out-of-pocket expenses heretofore incurred by Schwegmann or to hereafter be incurred in defense of plaintiff's claims brought against Schwegmann herein.
10.
Not alternatively, but primarily, Schwegmann as third-party plaintiff makes demand herein upon FDL Foods, Inc. and Aetna Casualty & Surety Company to fully indemnify Schwegmann, but to assume and provide a full defense to Schwegmann as to plaintiff's claims and to reimburse Schwegmann for all attorney's fees and other costs heretofore incurred by Schwegmann in defense of claims brought by plaintiff herein.
Aetna answered these allegations by alleging:
VI.
The allegations of paragraph 6 of the Third-Party Demand are denied except to admit that Aetna Casualty & Surety Company provided a policy of insurance to FDL Foods, Inc., but as to its terms, conditions, duration, exclusions, endorsements, and content in general, Third-Party Defendants plead the policy itself as the best evidence of its contents.
VII.
The allegations of paragraph 7 of the Third-Party Demand are denied except to admit that Aetna Casualty & Surety Company provided a policy of insurance to FDL Foods, Inc., but as to its terms, conditions, duration, exclusions, endorsements, and content in general, Third-Party Defendants plead the policy itself as the best evidence of its contents.
X.
The allegations of paragraph 10 of the Third-Party Demand require no particular *714 answer of Third-Party Defendants at this time, but in an abundance of caution, defendants deny each and every allegation contained therein.
The Aetna policy was offered in evidence and it contained the following endorsement:

Additional Insured

(VendorsBroad Form)
It is agreed that the "Persons Insured" provision is amended to include the person or organization (herein named as "vendor"), as an INSURED, but only with respect to the distribution or sale in the regular course of the vendor's business of the NAMED INSURED'S PRODUCTS, subject to the following additional provisions:
1. The insurance with respect to the vendor does not apply to:
(a) any express warranty unauthorized by the NAMED INSURED:
(b) BODILY INJURY or PROPERTY DAMAGE arising out of
(i) any physical or chemical change in the form of the product made intentionally by the vendor,
(ii) repacking, unless unpacking solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from the manufacturer and then repacked in the original container,
(iii) demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product, or
(iv) products which after distribution or sale by the NAMED INSURED have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor, or
(v) the sole negligence of the vendor.
The insurance does not apply to any person or organization, as INSURED, from whom the NAMED INSURED has acquired such products or any ingredient, part or container, entering into, accompanying or containing such products.
Name of vendor(s) Description of Product(s)
 All Vendors Meat

* * *
Under the clear language of the endorsement Schwegmann became an additional insured, entitled as such, to coverage and to a defense, just as if Schwegmann had been the named insured, unless some exclusion in the policy denied coverage.
Aetna's answer admits the existence of the policy, makes a general denial of Schwegmann's allegations of coverage and entitlement to a defense, and then offers the policy as the best evidence with regard to "its terms, conditions, duration, exclusions, endorsements, and content in general.".. However, Aetna failed to allege any specific language in the insurance contract that would exclude coverage of Schwegmann.
The denial of coverage in reliance upon an exclusion in an insurance contract is an affirmative defense which Aetna was required to plead in their answer. LSA-C. C.P. Art. 1005, Tudury v. Cooperative Cab Co., 265 So.2d 307 (La.App., 4th Cir., 1972); Nippert v. Baton Rouge Railcar Services, 526 So.2d 824 (La.App. 1st Cir.1988). In the absence of such pleading, no proof can be offered in connection with the exclusion, and none was offered by Aetna during the trial. Absent the exclusion, Schwegmann was an additional insured, and was entitled as such to coverage and to a defense.
Accordingly we find that Aetna owed Schwegmann a duty to defend them in their lawsuit, and we remand this case to the district court for a determination of the costs of defense owed to Schwegmann because of Aetna's failure to afford Schwegmann a defense.
For these reasons the judgment of the trial court on the main demand is reversed. The judgment of the trial court is affirmed insofar as it dismissed the third party action for indemnity by Schwegmann Giant Super Markets, Inc. against L.A. Frey & Sons, Inc. FDL Foods, Inc., and Aetna Casualty & Surety Company. The judgment on the third party demand is amended to provide as follows:

*715 IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Schwegmann Giant Supermarkets, Inc., and against Aetna Casualty & Surety Company in an amount to be determined by the district court because of Aetna Casualty & Surety Company's failure to provide a defense to Schwegmann Giant Supermarkets, Inc. The case shall be remanded to the district court for a hearing and determination of the amount owed.
Costs of the trial and this appeal are to be shared equally by plaintiff and by Aetna Casualty & Surety Co. All costs of the remand shall be borne by Aetna Casualty & Surety Co.
REVERSED IN PART. AFFIRMED IN PART. AMENDED AND REMANDED IN PART.
NOTES
[1] According to Webster's New Collegiate Dictionary, "gastroenteritis" is an inflamation of the lining membrane of the stomach and the intestines and a "pathogen" is a specific causative agent (as a bacterium or virus) of disease.