764 So.2d 176 (2000)
N.E. HAIRSTON, Plaintiff-Appellant,
v.
BURGER KING CORPORATION, Defendants-Appellees a/k/a C & L Restaurant Group And Liberty Mutual Insurance Company.
No. 33,587-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 2000.
*177 Murphy J. White & Associates by Murphy J. White, Mansfield, Counsel for Appellant.
Mayer, Smith & Roberts by Caldwell Roberts, Jr., Shreveport, Hailey, McNamara, Hall, Larmann & Papele by Valerie T. Schexnayder, Metairie, Counsel for Appellees.
Before BROWN and DREW, JJ., and CRIGLER, J. Pro. Tem.
CRIGLER, Judge Pro Tem.
N.E. Hairston appeals the trial court's finding that she failed to prove that her gastroenteritis was caused by eating C & L Restaurant's food. We affirm.

Facts
On July 18, 1998, Mrs. Hairston got hungry and having nothing in the house went to the Burger King in Mansfield and got a Whopper. She went home, cut the Whopper in half, ate half and put the other half in the refrigerator. About 30 minutes later she started suffering from severe bouts of diarrhea and vomiting. Hairston was unable to drive at night and her husband did not have a license, so she waited until the next day to go to the ER. She informed Dr. Denis Kamberov that she was sick as the result of a Whopper; he gave her Tagamet, an H-2 blocker which suppresses the acid in the stomach and helps the gastric problems, and released her. The medication had no effect and Hairston returned to the ER twice the next day still complaining about nausea, diarrhea and stomach cramping. Dr. Kamberov ran tests and put her on an I.V. for hydration. Dr. Kamberov diagnosed Hairston as having acute gastroenteritis, secondary to food poisoning.
Hairston filed suit against Burger King a/k/a C & L Restaurant Group and Liberty Mutual Ins. Co. After a hearing on the merits, the trial court ruled in favor of Burger King Corporation, C & L Restaurant Group and Liberty Mutual Ins. Co., finding that Hairston failed to carry her burden of proving that her condition was caused by consuming the Whopper she purchased from Burger King. Hairston appeals the ruling.

Law and Analysis
Hairston argues that the trial court was in error in determining that she did not prove that she had food poisoning which she got from eating half of a Burger King Whopper.
In establishing liability for the consumption of deleterious food the plaintiff must prove the product was in a deleterious condition when purchased and caused his illness. Griffin v. Schwegmann Bros. Giant Supermarkets, Inc., 542 So.2d 710 (La.App. 4th Cir.1989); Arbourgh v. Sweet Basil Bistro, Inc., 98-2218 (La.App. 4th Cir.5/19/99), 740 So.2d 186, writ denied 99-2942 (La.12/17/99), 751 So.2d 883; Molaison v. Denny's Inc., 592 So.2d 916 (La. App. 5th Cir.1991). The plaintiff bears the burden of proving a causal relationship between the consumption of the food and the complained of injuries. Molaison v. Denny's Inc., supra; Lee v. Church's Fried Chicken, 396 So.2d 374 (La.App. 1st Cir.1981). A trial court's factual findings are accorded great weight and may not be disturbed by a reviewing court in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989); Marshall v. Caddo Parish School Board, 32,373 (La. App.2d Cir.10/29/99), 743 So.2d 943. Where there are two permissible views of the evidence, the factfinder's choice cannot be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880 (La.1993); Marshall v. Caddo Parish School Board, supra.
Hairston testified that she only ate one-half of the Whopper and it did not smell or taste unusual. She further testified that *178 the only other thing she ate that day was a bowl of oatmeal from a box which she had been using. Hairston stated that she had never been hospitalized for vomiting, but was previously hospitalized due to a stroke, and has never been sick to that degree before or since. Hairston's niece, Virginia Jones, met her at the hospital during her third visit to the ER. Jones testified that her aunt appeared in pain, disoriented, pale, and weak. She testified that she has never before seen her aunt that ill.
Dr. Kamberov testified that he diagnosed Hairston as having acute gastroenteritis due to the nausea, vomiting, and diarrhea. He stated that there are several causes of gastroenteritis, one of which is food poisoning. He diagnosed food poisoning because of Hairston's history, that she had eaten the Whopper immediately before the symptoms and that she had never had these problems before.[1] Dr. Kamberov testified that Hairston was previously diagnosed with obstructed biliary disease without ductal dilation and prior hospitalization records revealed that she had acute gastroenteritis associated with vomiting and diarrhea on July 17, 1997 one year before this incident. Dr. Kamberov testified that none of the tests he conducted on Hairston revealed any bacteria that could have caused food poisoning; however, he could not rule it out. He also testified that the incubation for different types of bacteria which can cause food poisoning is anywhere from an hour to a week.
Lynn Ramsey, managing director for 16 Burger Kings, including the one in Mansfield, testified to preparation procedures. He stated that the Whopper patty is kept in a freezer at 0° to minus 10°, then transferred to a freezer well adjacent to or under the broiler/cooking platform where it is kept at 0° to minus 10°. It is then transferred by lifting tongs to the broiler where the temperature is between 800° to 1000°, then to a heated holding cabinet which is kept at over 150° for no longer than 10 minutes, then to a heat chute kept at 170° for no longer than 10 minutes and then served. Ramsey further testified that the patties are tested a minimum of four times a day to ensure that they are between 155° and 175°. He further testified that on the day in question over 800 Whoppers were served and Hairston was the only person to complain.
The trial court did not rule that Hairston did not have food poisoning, but found that she failed to carry her burden of proving that her condition was caused by consuming the Whopper. Kamberov testified that the cause of the food poisoning could have been anything Hairston ate from one hour to one week before she started having problems. Additionally, there was no evidence that any of the other 800 people who consumed a Whopper that day developed food poisoning. Hairston's testimony merely established she was having severe gastric problems and that she had eaten a Whopper. Based on the entirety of the evidence, the trial court was not manifestly erroneous in determining that eating the Whopper did not cause Hairston's gastric distress.
Finding that Hairston failed to prove a casual relationship between her gastroenteritis and eating the Whopper, we will not address her remaining assignments of error.

Conclusion
We affirm the trial court's ruling. Costs are assessed to Mrs. Hairston in accord with La. C.C.P. art. 5188.
AFFIRMED.
NOTES
[1] At the time of the diagnosis, Dr. Kamberov was not aware of any diseases or prior hospitalizations. His partner was Hairston's primary physician.