| SULLIVAN, Judge.
Cheryl Burnett and her husband, Stonewall Burnett, sued Betty Deville, d/b/a Log Cabin Catfish, and Essex Insurance Company, alleging that they contracted food poisoning while eating at the Log Cabin restaurant on December 19, 1997.[1] The trial court dismissed the Plaintiffs’ claims upon finding that they failed to prove the food consumed at the restaurant was the cause of their symptoms. For the following reasons, we affirm.
Facts
At about 6:00 p.m. on December 19, 1997, Mr. and Mrs. Burnett went to the Log Cabin restaurant, also known as “Betty’s” to celebrate Mrs. Burnett’s birthday. From the seafood buffet, Mrs. Burnett chose salad with French dressing, oysters, fish, and boiled shrimp; Mr. Burnett selected salad with the same dressing, fish, and fried shrimp. Both Mr. and Mrs. Burnett testified that they noticed a strange after-taste to the food, possibly from the salad dressing, and about thirty or forty minutes later, Mrs. Burnett began to experience abdominal cramps and nausea. According to Mrs. Burnett, she and her husband complained to a waitress and to a cashier that something had spoiled on the buffet, but neither employee investigated the situation. Before leaving the premises, Mrs. Burnett vomited in the parking lot. On the way home, the Bur-netts had to stop because both became sick.
About thirty minutes after returning home, the Burnetts went to the emergency room at Oakdale Community Hospital, where Dr. Blaine Lavergne diagnosed both of them with “Possible Food Poisoning.” Mr. Burnett testified that they were given medications for nausea and cramping before being discharged. On December 23, ls>1997, their family physician, Dr. M.R. Ghanta, readmitted them to the hospital after both reported vomiting, diarrhea, and abdominal cramps for the past three days. Dr. Ghanta ordered IV fluids for dehydration and medications for nausea, diarrhea, and pain. He discharged them both with a diagnosis of gastroenteritis and dehydration. Because the Burnetts did not remain for any cultures to be taken, Dr. Ghanta could not specify the etiology of the infection. On December 27, 1997, Dr. Ghanta *788 again admitted the Burnetts to the hospital with similar symptoms.
Dr. Ghanta had treated the Burnetts for abdominal problems before and after December of 1997. In August of 1997, Dr. Ghanta saw Mrs. Burnett for chronic abdominal pain after she presented a history of peptic ulcer disease and chronic pan-creatitis. Just one month before the present incident, from November 16 through 20, 1997, Dr. Ghanta hospitalized Mrs. Burnett for intractable abdominal pain, with a diagnosis of gastritis, an acidic pre-ulcer condition, chronic back pain, and chronic abdominal pain. One month after the incident at the Log Cabin restaurant, on February 13, 1998, Dr. Ghanta again treated Mrs. Burnett for nausea, vomiting, and diarrhea. Although Mrs. Burnett had a history of pancreatitis, which is known to cause diarrhea, Dr. Ghanta questioned that diagnosis because of her normal enzyme reports. He later suspected that she suffered from irritable bowel syndrome, which can be exacerbated by stress and nervousness. In October of 1998, Mrs. Burnett was again diagnosed with gastroenteritis after reporting abdominal cramps and diarrhea for four days.
Mr. Burnett had been treated by Dr. Ghanta on many occasions for gastroenteritis since 1989, as well as for hiatal hernia, acid reflux, and gall stones. Dr. Ghanta estimated that an average person may contract gastroenteritis once or [3twice a year, but Mr. Burnett had been treated for this problem about ten times a year. For example, two days before he ate at the Log Cabin restaurant, Mr. Burnett saw Dr. Ghanta for gastroenteritis that had produced diarrhea throughout the previous week. Mr. Burnett had also been hospitalized for gastroenteritis in July of 1997. Dr. Ghanta believed that Mr. Burnett was amenable to these infections and that he possibly was not following a proper diet for his medical conditions.
Dr. Ghanta testified that the infection the Burnetts sustained in December of 1997 was an acute condition that was not related to Mrs. Burnett’s chronic abdominal problems and that was more severe than some of Mr. Burnett’s other bouts with gastroenteritis. Concerning the cause of this infection, Dr. Ghanta testified that he had to look at the circumstances and that if the Burnetts’ history were correct, then he would relate the infection to the food consumed at the restaurant. Because the Burnetts contracted the same infection at the same time, Dr. Ghanta believed that it came from the same source. However, because no cultures were taken, he could not state whether the infection was bacterial or viral or whether it originated in food, water, or from elsewhere in the community.
After the presentation of evidence, on March 2, 2000, the trial court agreed to leave the record open so that counsel could take the depositions of Dr. Lavergne, who saw the Burnetts in the emergency room on December 19,1997, and Ms. Deville, the owner of the Log Cabin restaurant. After taking the matter under advisement, however, the trial court issued written reasons on March 31, 2000, before any additional evidence had been submitted. In those reasons, the trial court stated:
When these two presented themselves December 23 to Dr. Ghanta, had they not given him a history of having eaten at Betty’s it would have been just another episode of abdominal pain, diarrhea, et cetera.
14Absent the history given to Dr. Ghanta both plaintiffs’ symptoms could have been caused by failure on their part to follow proper diet considering their health conditions. Considering their chronic conditions of abdominal distress associated with diarrhea, et cet-era, to go into a restaurant where most of the food served is fried would seem to the Court to be asking for trouble. Their problem could have been caused by water or food contamination elsewhere. We don’t know what the etiology of this problem is, whether viral or bacterial, and we don’t know what the *789 incubation period would have been for the various infections from which they could have suffered.
Opinion
The Plaintiffs first argue that the trial court erred in rendering judgment before it received the deposition of Dr. Lavergne, in violation of its own order. La.R.S. 13:4207 provides in part: “The district judges and the judges of the city courts, shall render judgments in all cases taken under advisement by them, within thirty days from the time the cases are submitted for their decision.” La.Sup. Ct.R. G, § 2, Rule 13:4207.1 (emphasis added), specifies, in part, when a case is considered as “submitted”:
(a) When Submitted. A case or other matter shall be considered as fully submitted for decision to the trial judge, and should be decided, immediately upon the conclusion of trial or hearing, and judgment signed expeditiously thereafter.
In an exceptional ease when the record has been left open upon the conclusion of trial or hearing for the filing of testimony by deposition and/or documents, such depositions and/or documents shall be filed within fifteen days and the case or matter shall be considered as fully submitted, and should be decided, immediately after such filing or the lapse of fifteen days, whichever occurs sooner.
If the court, in an exceptional case, orders post-trial or post-hearing briefs, or orders the transcript prepared, plaintiff shall be allowed a maximum of twenty days within which to file a brief; defendant shall be allowed a maximum of twenty days from the filing or lapse of time for filing plaintiffs brief (whichever occurs sooner) within which to file a brief. If the defendant timely files a brief, plaintiff shall be allowed a maximum of ten days to file a rebuttal brief. When briefs are so ordered, the case or matter shall be considered fully | ssubmitted on the day following the day of the latest timely filing of a brief or, at the latest, the day following the last day for filing of briefs. The judge may extend the time for filing a brief for a reasonable period not to exceed the original time granted.
In the present case, the trial court left the record open on March 2, 2000 for the submission of depositions and post-trial briefs. The trial court did not set a time limit for filing the depositions, but it ordered that the Plaintiffs and the Defendants file post-trial briefs five days and ten days, respectively, after the submission of the depositions. Under the supreme court administrative rule, the depositions should have been filed within fifteen days of the conclusion of the trial. Allowing for the additional ten days to file briefs, we find that the case had been “fully submitted” when the trial court rendered its judgment on March 31, 2000. Additionally, we find that Dr. Lavergne’s deposition was not crucial to the Plaintiffs’ ease. The medical records of the one visit with Dr. Lavergne were available to the trial court, as was the deposition of Dr. Ghanta, who treated the Plaintiffs during the two subsequent hospitalizations that they relate to this incident.
The Plaintiffs next argue that the trial court erred in finding they failed to prove their damages were caused by the Defendants’ negligence in serving spoiled or tainted food. The following discussion in Hairston v. Burger King Corp., 33,587, p. 2 (La.App. 2 Cir. 6/21/00); 764 So.2d 176, 177 (citations omitted), sets forth the plaintiffs burden of proof as well as the standard of appellate review in cases such as this one:
In establishing liability for the consumption of deleterious food the plaintiff must prove the product was in a deleterious condition when purchased and caused his illness. The plaintiff bears the burden of proving a causal relationship between the consumption of the food and the complained of injuries. A trial court’s factual findings are accord *790 ed great weight and may not be disturbed by a reviewing court in the | fiabsence of manifest error. Where there are two permissible views of the evidence, the factfinder’s choice cannot be manifestly erroneous or clearly wrong.
In Hairston, the plaintiff developed diarrhea and nausea with vomiting approximately thirty minutes after eating one-half of a “Whopper” sandwich purchased from a Burger King restaurant. The next day, an emergency room physician diagnosed her with acute gastroenteritis, secondary to food poisoning, but none of the tests he performed revealed any bacteria associated with food poisoning. Additionally, the plaintiff had been hospitalized for acute gastroenteritis with vomiting and diarrhea one year before the Burger King incident; she also suffered from obstructed biliary disease without dilation. In affirming that the plaintiff failed to prove a causal connection between her gastroenteritis and eating the sandwich, the appellate court stated:
[The doctor] testified that the cause of the food poisoning could have been anything Hairston ate from one hour to one week before she started having problems. Additionally, there was no evidence that any of the other 800 people who consumed a Whopper that day developed food poisoning. Hairston’s testimony merely established she was having severe gastric problems and that she had eaten a Whopper.
Id. at 178 (emphasis added).
In Arbourgh v. Sweet Basil Bistro, Inc., 98-2218 (La.App. 4 Cir. 5/19/99); 740 So.2d 186, writ denied, 99-2942 (La. 12/17/99); 751 So.2d 883, cited by the Burnetts, the plaintiffs proved causation, in part, with medical tests showing that their child had ingested the compylobacter bacteria. One source of that organism is undercooked chicken, which the plaintiffs’ son had consumed at the defendant’s restaurant the day he became ill.
17In the present case, the Plaintiffs cite Dr. Ghanta’s testimony that the December 1997 incident was an acute episode unrelated to their chronic abdominal problems. They also rely on jurisprudence stating that they “need not negate every conceivable cause nor produce a scientific analysis of the alleged contaminated food.” Jackson v. Winn Dixie Stores, Inc., 439 So.2d 1147,1148 (La.App. 4 Cir.1983). Although we agree with the Plaintiffs’ representation of Dr. Ghanta’s testimony and the statement of law in Jackson, we do not find that the trial court committed manifest error in rejecting their claims.
Dr. Ghanta testified that if the Plaintiffs’ history were correct, then he would relate their symptoms to the food consumed at the restaurant. However, Dr. Ghanta could not identify the source of the infection, and he could not rule out as other possible causes the local drinking water or from elsewhere in the community. Although a plaintiff need not scientifically identify the infection-producing organism to recover in a food poisoning case, he must still prove causation by a preponderance of the evidence. See Arbourgh, 740 So.2d 186. When the lack of more specific evidence of causation is considered in light of the Burnetts’ medical histories, we find no error in the trial court’s conclusion that they did not meet this burden. The evidence simply does not preponderate in their favor, given their propensity to gastric disorders and Dr. Ghanta’s reliance solely on their accounts to formulate his opinion of causation.
Decree
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Cheryl and Stonewall Burnett.
AFFIRMED.
WOODARD, J. concurs in the result.

. The Plaintiffs filed separate suits that were consolidated at trial. Although the suits remain consolidated on appeal, we will render a separate opinion under each docket number. See Burnett v. Essex Ins. Co., 00-810, 773 So.2d 791 (La.App. 3 Cir. 11/14/00).