# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1014

**JOHN FOSTER, JR.**

**VERSUS**

**AFC ENTERPRISES, INC., ET UX.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 69,644
HONORABLE JOHN C. FORD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**BILLY HOWARD EZELL**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders, Marc T. Amy, and Billy Howard Ezell, J. David Painter, Judges.

Amy, J., dissents and assigns written reasons.
Saunders, J., dissents for the reasons assigned by Judge Amy.

**AFFIRMED.**

**Elvin C. Fontenot, Jr.**
**110 East Texas Street**
**Leesville, LA   71446**
**(337) 239-2684**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
        **John Foster, Jr.**

**Larry A. Stewart**
**Andrew P. Texada**
**Stafford, Stewart & Potter**
**Post Office Box 1711**
**Alexandria, LA   71309**
**(318) 487-4910**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
        **Liberty Mutual Insurance Company**
        **AFC Enterprises, Inc.**

**EZELL, JUDGE.**

A restaurant patron brought suit, alleging that he suffered from food poisoning after consuming a chicken meal from the Defendant restaurant. Following a bench trial, the trial court found in favor of the Plaintiff. The Defendants now appeal. For the following reasons, we affirm.

## FACTS

The record of the proceedings below indicates that on June 3, 2002, the Plaintiff John Foster, Jr., awoke and ate his standard breakfast of grits, bacon and eggs before leaving for his job in the maintenance department of the Vernon Parish School Board. He testified that, between 11:00 and 11:30 a.m., he and a co-worker went to Church's Fried Chicken for lunch, where he ordered three pieces of chicken, french fries, and a cold drink. Mr. Foster further testified that he returned to work to eat his meal, finished his workday, and returned home in the afternoon. According to Mr. Foster, he did not eat anything else after lunch because he began vomiting and having stomach pains at approximately 7:00 p.m. that evening. His stomach pains and vomiting persisted until his wife took him to a hospital emergency room during the early morning hours of June 4.

Mr. Foster was admitted into the emergency room at Byrd Regional Hospital complaining of abdominal pain, nausea, and vomiting. Mr. Foster testified that he was first seen by Dr. Victor Hernandez in the emergency room, who, upon hearing of Mr. Foster's lunch told him, "you have been food poisoned . . . ." While there is no testimony from Dr. Hernandez, emergency room records indicate that Dr. Hernandez was the initial treating physician. Chest and stomach x-rays were normal. Dr. Hernandez wanted to rule out cholecystitis and biliary colic, gallbladder problems, so he ordered a hepoatobilliary scan. While in the emergency room, Mr.

Foster vomited a green liquid with food particles. Despite treatment in the emergency room, doctors were unable to control Mr. Foster's vomiting and he was admitted to the hospital.

According to the record, Mr. Foster's doctor, Dr. Hanna Lubbos, also met with him during the morning of June 4. Dr. Lubbos had been treating Mr. Foster for diabetes mellitus type 2 since 1999, which had been controlled fairly recently. In his assessment Dr. Lubbos diagnosed Mr. Foster with "[g]astroenteritis that is most likely secondary to food poisoning with vomiting that is responding to conventional therapy." At his deposition, Dr. Lubbos stated that neither a sample of Mr. Foster's stool nor his vomitus was taken and inspected during his hospital stay.

Dr. Guru Ghanta also examined Mr. Foster on a referral from Dr. Lubbos. Dr. Ghanta noted that Mr. Foster had "[n]o history of indigestion, heartburn or any alteration of bowel habits." His impression was "[p]ossible acute gastritis; rule out acute peptic ulcer disease." His report does not mention food poisoning.

Mr. Foster testified that later in the morning of June 4, he felt "a little better – a whole lot better than I was when I first went there . . . ." Dr. Lubbos discharged him with a final diagnosis of gastroenteritis with food poisoning. Mr. Foster testified that after returning home he continued to have stomach pains and feel nauseated and could not return to work for approximately three or four days.

Mr. Foster filed suit alleging that he "was advised that he was diagnosed with food poisoning" and "that the sole cause of his condition was the faulty preparation of the food prepared by the employees of defendant." Following a bench trial, the trial court found in favor of Mr. Foster, awarding him $2,500.00 in general damages and $1,143.65 in special damages. The trial court then granted Mr. Foster's motion

for new trial, which alleged that the court had failed to award medical payments made by his insurer as required by the collateral source rule. The court changed the damage awards to $2,500.00 for general damages and $6,353.60 for special damages, which represented the total amount of medical charges Mr. Foster incurred in relation to the incident.

The Defendants took a suspensive appeal from this decision. They alleged that the trial court erred in finding Mr. Foster suffered from food poisoning sold by Church's.

**DISCUSSION**

To meet his or her burden of proof in a food poisoning case, the plaintiff must prove that the deleterious condition existed in the product when it was purchased. *Hairston v. Burger King Corp.*, 33,587 (La.App. 2 Cir. 6/21/00), 764 So.2d 176. The plaintiff must further prove the existence of a causal relationship between the illness or injury and the consumption of the food. *Id.* In fulfilling this burden of proof, "it is not necessary for the consumer to negate every conceivable cause but he must show that it is more likely than not that the food's condition caused the injury of which he complains." *Griffin v. Schwegmann Brothers Giant Supermarkets, Inc.*, 542 So.2d 710, 712 (La.App. 4 Cir. 1989).

> "The courts have never compelled a plaintiff to produce an actual analysis of the food consumed in order to establish its unwholesome condition. Rather, the courts have been willing to infer the deleterious nature of the food consumed from the circumstances surrounding the illness. In all of the cases in which there has been successful recovery, the plaintiff has shown that the food was consumed by him, and that no other food which might reasonably be assumed to have caused the illness had been consumed within a number of hours before or after the consumption of the suspect product. The plaintiff has also had medical opinion to the effect that it was probable that his illness was caused by the consumption of the particular product involved. In addition, the successful plaintiffs in the above cases have been able to show some

other independent circumstance, which tends to prove his case. . . ." *Lee v. Church's Fried Chicken*, 396 So.2d 374, 375 (La.App. 3 Cir. 1981)(*quoting McCauley v. Manda Bros. Provisions Co.*, 202 So.2d 492, 495 (La.App. 1 Cir.), *writ granted*, 251 La. 402, 204 So.2d 578 (1967), *affirmed*, 252 La. 528, 211 So.2d 637 (1968)). Furthermore, Mr. Foster does not have to establish that other people became ill from eating the chicken. *McAvin v. Morrison Cafeteria Co. of Louisiana*, 85 So.2d 63 (La.Orls.App. 1956).

Mr. Foster explained that the only other food he ate that day was his usual breakfast items. It was after he consumed the chicken that he fell violently ill. While we recognize that the hepoatobilliary scan indicated evidence of chronic cholecystitis, his own treating physician, Dr. Lubbos, testified that Mr. Foster had never had any stomach problems before. Both Mr. Foster and his wife testified that he had never had stomach problems before. Dr. Lubbos explained that his diagnosis of food poisoning was based on the symptoms of abdominal pain, nausea, and vomiting and the history provided by Mr. Foster.

In the instant case, the trial court ruled in favor of the Plaintiff, stating in its written reasons for judgment that "[c]onsidering the testimony of the parties and Dr. Lubbos' diagnosis at the time he first examined plaintiff, the Court finds that it is more probable than not that plaintiff's condition was the result of food poisoning." In considering a case in which the plaintiff alleges that the consumption of deleterious food caused illness, a court of appeal may not upset a trial court's findings of fact absent manifest error. *Hairston*, 764 So.2d 176.

Based on the entirety of the evidence, we cannot say that the trial court was clearly wrong in its decision that Mr. Foster met his burden of proving that the

4

chicken he received at the Defendant's place of business was served to him in a deleterious condition and that the consumption of that chicken actually caused his injuries. While Mr. Foster had "evidence" of chronic cholecystitis, he had never suffered any problems as a result of the possible condition. His own treating physician released him from the hospital with a diagnosis of food poisoning as the most probable cause of his sudden stomach illness. There was also an absence of evidence that Mr. Foster had ever suffered any stomach problems either before or after this incident. Therefore, we find that the trial court could conclude that more probably than not that Mr. Foster's condition was caused by chicken from Church's contaminated with food poisoning that he had eaten before he got sick. In response all Church's offered was an affidavit that no one else made a claim that they had gotten sick that day from the chicken. It could have been that no one reported their illness or that Mr. Foster was the only person served from a particular batch of chicken that somehow got contaminated. Furthermore, there was no evidence or testimony that this was not food poisoning or unlikely that it was food poisoning. We find no manifest error in the trial court's ruling.

For the reasons set forth in this opinion, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Liberty Mutual Insurance Company and AFC Enterprises, Inc.

**AFFIRMED.**

5

NUMBER 04-1014

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

JOHN FOSTER, JR.

VERSUS

AFC ENTERPRISES, INC., ET AL.


AMY, J., dissenting.

I respectfully dissent, as I find error in the trial court's determination that the plaintiff fulfilled his burden of proof. In my opinion, a reversal is required. My review indicates that the plaintiff did not prove by a preponderance of the evidence that the food served by the defendant was in a deleterious condition, nor that the plaintiff's illness was caused by his consumption of the defendant's product.

The trial court's reasons reveal that it considered Dr. Lubbos' initial diagnosis that the plaintiff's illness was "[g]astroenteritis that is most likely secondary to food poisoning" in determining that the plaintiff met his burden of proof. However, Dr. Lubbos testified in his deposition that the plaintiff's illness could have been caused by a flare-up of chronic cholecystitis, food poisoning, a reaction to some other viral or bacterial agent, or some other unknown condition.

To ascertain the exact cause of the sickness, Dr. Lubbos testified that testing a stool sample would be the proper method for finding whether bacteria were present in a patient. When explaining why a stool sample was not collected from Mr. Foster, the doctor stated:

> He was not really having any diarrhea, and sometimes the . . . really, the treatment, even if it is food poisoning, it's like 24 hours of IV fluids. The cost of doing all these tests, it takes two or three days to get it back, and the patient will be out of the hospital, and so we don't do exact testing, what caused the diarrhea, it will go away, or the food poisoning, because it will go away in up to 24 hours.

Dr. Lubbos' testimony demonstrates that, because he did not perform any bacterial or viral tests on the plaintiff, there was no way to determine exactly what caused the plaintiff's sickness. He said that, in reaching his initial diagnosis, he relied on the history provided by the plaintiff. Dr. Lubbos stated, "I mean, it's the story that the patient gives you, and then just you have to go by what he says[.]"

In addition to the absence of viral and bacterial test results, there are a number of additional factors in the instant matter that suggest that the plaintiff did not prove that the food was in a deleterious condition when it was served. For instance, the defendants submitted evidence that no other claims were made from June 1, 2002 to June 10, 2002 regarding the Church's Fried Chicken restaurant that the plaintiff visited. Further, the plaintiff testified that the chicken he ate tasted "fine" to him when he ate it.

Despite the plaintiff's testimony that the only other thing he ate on June 3, 2002 was his usual breakfast, his physician testified that if Mr. Foster had suffered from food poisoning, he could have come into contact with the bacteria or virus at any time within twenty-four hours prior to visiting the hospital "and probably longer than that time." Also, the record is devoid of evidence which would suggest what Mr. Foster consumed in the period prior to his breakfast on the morning of his illness.

Based on the entirety of the evidence, I find manifest error in the trial court's determination that the plaintiff proved that it is more likely than not that the food he received at the defendant's place of business was served to him in a deleterious condition and that the consumption of that food actually caused his injuries. As I find a reversal appropriate, I respectfully dissent.

2