# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-441

TERESE LANDRY

VERSUS

JOEY'S, INC. D/B/A JOEY'S SPECIALTY FOOD

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2016-5339, DIVISION "L"
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Marc T. Amy, Judges.

**AFFIRMED.**

Richard Todd Musgrave
Sean P. Sullivan
Musgrave, McLachlan & Penn, L.L.C.
1515 Poydras Street – Suite #2380
New Orleans, LA 70112
Telephone:  (504) 799-4300
COUNSEL FOR:
     Defendant/Appellee – Joey's, Inc. d/b/a Joey's Specialty Food

Dwazendra J. Smith
Doran & Cawthorne, P.L.L.C.
521 E. Landry Street
Opelousas, LA 70571
Telephone:  (337) 948-8008
COUNSEL FOR:
     Plaintiff/Appellant – Terese Landry

**THIBODEAUX, Chief Judge.**

Plaintiff Terese Landry appeals the trial court's grant of summary judgment in favor of Defendant Joey's Inc. d/b/a Joey's Specialty Food. Plaintiff filed suit alleging that her consumption of a fried shrimp po-boy sandwich from Defendant's food store caused her to become ill with food poisoning. Defendant moved for summary judgment thereafter, contending that Plaintiff could not prove by a preponderance of the evidence that the food she allegedly consumed was deleterious, nor that its consumption was the direct cause of her illness. The trial court granted Defendant's Motion for Summary Judgment, finding that a reasonable juror could not conclude from the facts adduced that Plaintiff could sufficiently carry her burden of proof at trial. Because we find that Plaintiff has not presented evidence sufficient to create a genuine issue of material fact, we affirm the trial court's judgment dismissing Plaintiff's claims with prejudice.

I.

**ISSUE**

We must determine whether the trial court erred in granting Defendant's motion for summary judgment.

II.

**FACTS AND PROCEDURAL HISTORY**

On October 7, 2015, at approximately noon, Plaintiff Terese Landry ordered a fried shrimp po-boy sandwich from Joey's, a lunchtime food store owned and operated by Defendant Joey's Inc. d/b/a Joey's Specialty Food ("Joey's") in Lafayette, Louisiana. Because the food store was full of patrons at the time, Ms.

Landry decided to eat the sandwich while sitting alone in her parked car. She testified that the sandwich she received, however, had no fried shrimp in it, but instead contained a mayonnaise-like mixture and a green, leafy vegetable. In addition to finding that her order was incorrect, Ms. Landry noted that her sandwich "just didn't taste right." In spite of these facts, Ms. Landry never sought to correct her order, and further proceeded to eat the entire sandwich.

At approximately 4:00 a.m. the following morning, an ambulance was called after Ms. Landry reported becoming extremely ill with severe nausea, vomiting, and diarrhea. Upon presentation to the emergency room, Ms. Landry stated to Dr. Edward Lyons that she had eaten a po-boy sandwich the day before, and that her symptoms began approximately six hours prior to calling the ambulance. She also stated she believed that her sandwich was cross-contaminated with fish and that she was suffering from a fish allergy, despite never having been medically diagnosed with any food allergies. Dr. Lyons diagnosed Ms. Landry with diverticulitis, pancreatitis, and enteritis. After a stool culture taken came back positive for the Campylobacter bacterium, Dr. Lyons related the enteritis to the presence of Campylobacter. Following her diagnosis, Ms. Landry was hospitalized for seven days.

In his deposition, Dr. Lyons stated that he believed that the Campylobacter was the "inciting agent" of Ms. Landry's illness. However, he also testified that he was not aware of that particular bacterium being transmitted from fish or seafood, though it is commonly found in poultry, swine, and sometimes cattle. He further testified that there was no way to test or determine what Ms. Landry had eaten the day before. Ultimately, Dr. Lyons was unable to determine the specific origin of the Campylobacter bacterium contracted by Ms. Landry, and thus could

not state that her illness was more likely than not caused by her consumption of the Joey's po-boy sandwich.

Ms. Landry filed suit against Joey's, alleging that the shrimp po-boy sandwich she consumed was in a deleterious condition at the time it was purchased, and that her consumption of the sandwich caused her to become ill with food poisoning. Following its Answer, Joey's filed a Motion for Summary Judgment before the trial court, asserting that Ms. Landry failed to satisfy her burden of proving by a preponderance of the evidence either of the above elements. Joey's also produced the sworn affidavit of Joey Beyt, the food store's owner, attesting that he was first put on notice of the alleged food poisoning upon receiving Ms. Landry's Petition, that he had not been found in violation of any health code or standard, and that no other patron alleged to have contracted food poisoning from his location. After finding that she failed to present any evidence refuting the sole medical opinion on causation, the trial court granted the motion and dismissed Ms. Landry's claims with prejudice.

On appeal, Ms. Landry seeks a reversal of the trial court's granting of summary judgment by arguing that she "can adequately prove more probable than not that Appellee's po-boy was the cause of her severe food poisoning." She argues that genuine issues of material fact remain as to whether: (1) the shrimp po-boy she consumed from Joey's was deleterious, which was the cause of her illness; (2) the Campylobacter bacterium came from the shrimp po-boy; and (3) there were other similar food poisoning cases at the hospital at the time of her admission.

## III.

## STANDARD OF REVIEW

An appellate court reviews the grant of a motion for summary judgment de novo, "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." *Supreme Serv. & Specialty Co., Inc. v. Sonny Greer*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638. We shall consider the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-moving party. *Hines v. Garrett*, 04-806 (La. 6/25/04), 876 So.2d 764.

If the mover will not bear the burden of proof at trial on the matter, then he must only present evidence pointing out the absence of factual support for one or more essential elements to the non-moving party's case. La.Code Civ.P. art. 966(D)(1). Once the mover properly supports his motion for summary judgment, the burden is on the non-moving party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.* However, the failure of the non-moving party to set forth evidence of a material factual dispute mandates the granting of the motion. *Babin v. Winn-Dixie Louisiana, Inc.*, 00-78 (La. 6/30/00), 764 So.2d 37.

Where the threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains, such a determination must be viewed in light of the relevant substantive law. *Romero v. Allstate Ins. Co.*, 08-256 (La.App. 3 Cir. 5/13/09), 11 So.3d 579, *writ denied*, 09-1325 (La. 10/9/09).

IV.

## LAW AND DISCUSSION

On appeal, Ms. Landry contends that the trial court erred in granting Joey's motion for summary judgment. Ms. Landry argues that she can prove the requisite elements of deleteriousness and causation such that she is able to bear her burden of proof by a preponderance of the evidence. This court has applied the following standard in establishing liability for the consumption of deleterious food:

> To meet his or her burden of proof in a food poisoning case, the plaintiff must prove that the deleterious condition existed in the product when it was purchased. The plaintiff must further prove the existence of a causal relationship between the illness or injury and the consumption of the food. In fulfilling this burden of proof, "it is not necessary for the consumer to negate every conceivable cause but he must show that it is more likely than not the food's condition caused the injury of which he complains."

*Foster v. AFC Enterprises, Inc.*, 04-1014, p. 3 (La.App. 3 Cir. 3/2/05), 896 So.2d 293, 296 (citations omitted) (quoting *Griffin v. Schwegmann Bros. Giant Supermarkets, Inc.*, 542 So.2d 710, 712 (La.App. 4 Cir. 1989)).

Ms. Landry relies on the following language cited by the *Foster* ruling to argue that she can prove the deleteriousness of the po-boy sandwich she allegedly consumed:

> "The courts have never compelled a plaintiff to produce an actual analysis of the food consumed in order to establish its unwholesome condition. Rather, the courts have been willing to infer the deleterious nature of the food consumed from the circumstances surrounding the illness. In all of the cases in which there has been successful recovery, the plaintiff has shown that the food was consumed by him, and that no other food which might reasonably be assumed to have caused the illness had been consumed within a number of hours before or after the consumption of the suspect product. The plaintiff has also had medical opinion to the effect that it was probable that

5

his illness was caused by the consumption of the particular product involved. In addition, the successful plaintiffs in the above cases have been able to show some other independent circumstance, which tends to prove his case. . . ."

*Id.* (quoting *McCauley v. Manda Bros. Provisions Co.*, 202 So.2d 492, 495 (La.App. 1 Cir.), *writ granted*, 251 La. 402, 204 So.2d 578 (1967), *aff'd*, 252 La. 528, 211 So.2d 637 (1968)). In so relying, Ms. Landry asserts that this court should be willing to infer the deleteriousness of the po-boy sandwich she allegedly consumed from the circumstances surrounding her illness. *Id.* We disagree.[1]

Ms. Landry testified that the sandwich was the only food she had eaten on the day before falling ill. However, while she need not produce an analysis of the suspect food, we find particularly troublesome the evidence offered by Ms. Landry regarding her actual consumption of the food. Beyond her own deposition testimony, no evidence has been presented to corroborate either the purchase or the consumption of the Joey's po-boy sandwich. Moreover, Ms. Landry could not identify the very food which she now alleges was in a deleterious condition at the time she purchased it from Joey's:

> Q: In looking back and thinking about the sandwich, are you able to say definitively that it was fish?
>
> A: All I can tell you, I asked for a shrimp sandwich. I thought I was getting a fried shrimp sandwich. And when I got it, it was like a mixture of – of something with the green leafy stuff inside. And I was real hungry, and I ate it all. And that's it. Which I'll regret it until – for the rest of my life.
>
> . . . .

---

[1]We also note that the decision in *Foster* was rendered from a procedural posture distinct from that of the instant case. While the court in *Foster* did not disturb the trial court's findings that the plaintiff had sufficiently met his burden of proof pursuant to a manifest error standard of review, this court is tasked with conducting its own independent, de novo review of the trial court's grant of summary judgment in favor of Defendant.

Q: The shrimp itself, did it look like –

A: There was no shrimp in it.

Conversely, Joey's cites to *McCauley* as the original source of the language quoted by *Foster* to emphasize several points. First, Joey's points out that Ms. Landry does not have "medical opinion to the effect that it was probable that [her] illness was caused by the consumption of a particular product involved." *McCauley*, 202 So.2d at 494-95. As examined in greater detail below, Dr. Lyons could not and did not state that it was more probable than not that Ms. Landry's food poisoning was caused by her alleged consumption of the po-boy sandwich.

Second, Joey's argues that Ms. Landry has not "been able to show some other independent circumstance, which tends to prove [her] case," unlike other successful plaintiffs. *Id*. at 496. As Joey's correctly notes, *McCauley* goes on to feature illustrative examples in the jurisprudence of what constitutes an "independent circumstance," which were not included in the language of *Foster* relied upon by Ms. Landry:

> In the Doyle case, supra, for instance, it was shown that the plaintiff's companion, who ate in the same place at the same time of the same products also became ill. In the MacLehan case, supra, the plaintiff partook of the same pie on two different occasions, and got sick on each occasion. In the McAvin case, supra, the plaintiff noticed that the shrimp salad involved had a bad odor and taste and ate only a small portion of it. In Ogden v. Rosedale Inn, supra, only those persons who consumed the suspect salad became ill. In the cases of Love v. New Amsterdam Casualty Company, supra, and Gilbert v. John Gendusa Bakery, Inc., supra, foreign substances were found in the food consumed.

*Id*.

While Ms. Landry's brief correctly posits that she is not required to show that others have fallen ill from contaminated food per *Foster*, it goes on to

7

suggest that her testimony describing two other separate cases of food poisoning begets a genuine issue of material fact with respect to her own illness. We find no merit in this assertion, given the lack of any material connexity established by the following testimony:

> Q: Are you aware of anyone else that became sick from eating at Joey's Specialty Food?
>
> A: There was [sic] two people at the hospital when I was there. I was told that by the workers.
>
> Q: And what did the workers say, exactly?
>
> A: All they said, there was [sic] two people with the same problem. That's all I know.
>
> . . . .
>
> Q: So all they told you, or all that you knew is that two other people at that hospital, at that same time, were also having stomach issues?
>
> A: Not the issues. They had gotten food poisoning, just like me.
>
> Q: [T]hey didn't say where from or what they ate?
>
> A: No, sir. They can't do that.

In fact, Ms. Landry has not offered any proof relative to the unwholesomeness of the po-boy sandwich beyond presenting her own version of events. *See McCauley*, 202 So.2d at 496.

> Q: What did it taste like?
>
> A: It didn't taste right, but I was very hungry, so I ate it all.
>
> Q: Did it have an odor?
>
> A: No. It just didn't have the right taste.
>
> . . . .

8

Q: So what was in it?

A: I thought I was getting a fried shrimp sandwich and I got -- you know, when you – you make a shrimp salad --

Q: Yes.

A: -- you got to crush everything? Well, that was not like that. It was more like, mayonnaise mixture.

Q: Okay.

A: But it didn't taste like it was mayonnaise either.

Q: Why didn't you go back in if they gave you the wrong sandwich?

A: I was in a hurry. Because I didn't want to go back in. I didn't have time. I wanted to run some errands, but I had went straight back to my house.

Though she testified about the taste not being "right," her testimony suggests that it was due to receiving the incorrect order, rather than attributing an impurity to the sandwich. She then decided to eat the entire sandwich with the understanding that it was not the sandwich she ordered. Though she "did not open the sandwich" to see its contents, she responded affirmatively that she "knew immediately it wasn't fried shrimp[.]" Despite remaining on the premises to eat the sandwich, she neither sought to correct her order, nor address the taste of the sandwich with the staff at Joey's. Further, it is undisputed that Ms. Landry never contacted Joey's regarding her alleged illness thereafter, as reflected in her own testimony and the sworn affidavit of Joey Beyt.

From our review of the record, Ms. Landry has not presented evidence of any independent circumstance tending to prove her case. In the absence of evidence demonstrating otherwise, Ms. Landry's unwillingness to correct her order and her consumption of the entire sandwich appear to directly contradict her efforts

9

of proving the deleteriousness of the food consumed. Though she was able to provide testimony regarding the timing of her alleged consumption of the food in the hours before falling ill, we are not so inclined to infer the deleteriousness of the po-boy sandwich from the remaining facts adduced. Accordingly, we find that Ms. Landry has not presented facts creating a genuine issue of material fact with respect to whether the po-boy sandwich she allegedly consumed was in a deleterious condition at the time of purchase from Joey's food store.

**Causation**

Next, Ms. Landry asserts that the trial court erroneously granted summary judgment based upon a mischaracterization of Dr. Lyons's testimony regarding causation. While the trial court found that "Plaintiff presented no evidence that a fish product can cause the food-borne bacteria with which she was diagnosed," Ms. Landry alleges that Dr. Lyons's deposition testimony "establishes a clear causal link" between the food consumed and the injuries suffered. We reject Ms. Landry's argument, and likewise agree with the trial court's finding, for the following reasons.

Dr. Lyons provided the sole medical opinion in this case, as he was the only medical provider who treated Ms. Landry's illness. Coincidentally, Dr. Lyons was Ms. Landry's primary care physician at the time, and she visited him for a regular check-up just prior to having lunch at Joey's the day before. He testified that Ms. Landry has always suffered from a degree of gastrointestinal issues, including peptic ulcer disease, chronic gastritis, and non-celiac gluten sensitivity. However, he has never diagnosed Ms. Landry as having any food allergies.

> Well, she told me . . . that she had an allergy to fish. She told me she had had a po-boy, and she thinks it had been cross-contaminated with fish. I don't know why she thought that. She also told me a bit later during the

hospital stay that she thought she had passed a worm. I had cultured her stool, and we identified Campylobacter. I'm not aware of Campylobacter being transmitted from fish. It's not uncommon in poultry or in swine, possibly, to a lesser extent, cattle.

Upon identifying the Campylobacter infection, Dr. Lyons testified that "[he] felt that the Campylobacter was the inciting agent" of her illness. We note here that while Ms. Landry insists the trial court erroneously mischaracterized Dr. Lyons's testimony, she in fact misstates the testimony herself as creating a causal link by repeatedly concluding, "Dr. Lyons pointed directly to the po-boy that Ms. Landry consumed as being the inciting agent for her food poisoning." In light of the actual facts and testimony presented, her contention is simply untenable.

Q: There wasn't any way to test anything she had eaten that day, was there?

A: There was not.

. . . .

Q: And do you recall, just based on the conversation – because the only thing in the notes that she said is that she had the shrimp po-boy and thought it might have been --

A: I didn't even know what kind of po-boy it was, but she did tell me she had a po-boy.

Q: Okay. Other than that, was there anything that would lead you to be able to pinpoint where, more likely than not, this Campylobacter infection came from?

A: There was not, no. And I mean, that's typical. I mentioned to you a number of different infectious pathogens. In none of the cases could I actually determine . . . I couldn't relate it to anything specifically, although I did look.

This court has held that, "[a]lthough a plaintiff need not scientifically identify the infection-producing organism to recover in a food poisoning case, [s]he must still prove causation by a preponderance of the evidence." *Burnett v. Essex Ins.*

11

*Co.*, 00-809, p. 7 (La.App. 3 Cir. 11/2/00), 773 So.2d 786, 790.[2] In the instant case, Dr. Lyons was not only able to identify the presence of Campylobacter, but also considered it to be the inciting agent of Ms. Landry's illness. However, the identification of the bacterium present in Ms. Landry's system alone cannot establish causation in the absence of more specific evidence suggesting that the Campylobacter bacterium originated from Ms. Landry's alleged consumption of the sandwich.

Contrary to Ms. Landry's assertion, Dr. Lyons's testimony introduces the unlikelihood that Ms. Landry's consumption of the sandwich caused her to contract the bacterium, and thus resulted in her illness. Although there was no way to determine what Ms. Landry had eaten the day before, Dr. Lyons stated that in cases of infectious diseases causing diarrhea such as this one, he calls the hospital's microbiologist to investigate whether there was an increased incidence of Campylobacter in the community. In Ms. Landry's case, it was determined that her illness was not part of a larger picture of infections. When asked about the potential sources of Campylobacter, Dr. Lyons relayed the following, ultimately concluding that "[i]n none of the cases could [he] actually determine" where the bacterium came from:

> So I had [another patient] present with diarrhea that I worked up, and it also turned out to be Campylobacter. Same thing: There was not an increased incidence in the community, as best as I could tell, and I could never determine exactly where he got it. . . . That was kind of the same case as Ms. Landry.

---

[2]Ms. Landry misapplies the standard regarding causation. Her brief states, "Appellant testified that a po-boy from Joey's was the only food item she had consumed the day she contracted her illness, *making it reasonable to assume causation* by a preponderance of the evidence with the lack of another inciting agent." As the most critical, and often most burdensome, element to be proven before imposing liability, causation must be *established* by a preponderance of the evidence rather than merely assumed based upon a reasonable belief.

Ms. Landry correctly asserts in her brief that while Dr. Lyons stated that he is unaware of the bacterium being transmitted from fish, he does not state that it is an impossibility. Beyond this statement, however, she has failed to present any evidence suggesting that fish or seafood can be a source of Campylobacter, or to otherwise refute the only medical opinion establishing the absence of a causal link. Though it remains uncontested and unfortunate that Ms. Landry contracted the Campylobacter bacterium, which we accept to have caused her illness, nothing in the record serves to provide an independent, causal link between her alleged consumption of the po-boy sandwich and the presence of the bacterium. While her own testimony suggests some correlation between the two events, the evidence presented, on balance, does not create a genuine issue of material fact with respect to establishing causation.

V.

**CONCLUSION**

We cannot say that Ms. Landry has presented sufficient evidence to create any genuine issue of material fact regarding the deleteriousness of the food allegedly purchased and consumed from Defendant's food store, which in turn caused her illness. Even if this court were so inclined to infer the deleteriousness of the po-boy sandwich allegedly purchased and consumed by Ms. Landry, we find the absence of evidence presented demonstrating any positive causal connection in her favor mandates the granting of summary judgment in Defendant's favor.

Based upon the foregoing, the judgment of the trial court is affirmed in all respects. Costs of this appeal are assessed to Terese Landry.

**AFFIRMED.**

13